Mary A. Metcalf, Appellee, v. Hal Metcalf and State Bank of Girard, Appellants.

Gen. No. 8,981.

Opinion filed June 3, 1936.

JAMES H. MURPHY and JESSE PEEBLES, both of Carlinville, for appellants.

GEORGE E. STODDARD and GILLESPIE, BURKE & GILLESPIE, of Springfield, for appellee.

MR. JUSTICE FULTON delivered the opinion of the court.

Mary A. Metcalf, appellee, resident of Girard, Illinois, filed her complaint asking for an accounting in the circuit court of Macoupin county on January 9, 1934, against Hal Metcalf individually and the State Bank of Girard, a corporation, appellants. Upon the trial of the cause, judgment was entered, both jointly and severally, against the appellants in the sum of $5,267.50 and the rendering of said judgment is the basis of this appeal.

The complaint alleged appellee to be of advanced years, inexperienced in management of business affairs, the securing of aid and advice from appellants in the conduct of same, the reposing of full faith and confidence in them, the establishment of a confidential relation and the mismanagement of various business transactions by the appellants causing loss to the appellee.

The evidence discloses the appellee to be a widow of 73 years of age with absolutely no knowledge whatever regarding business affairs. Her husband, who died in the year 1921, had formerly conducted a great amount of his business through the appellant bank. After his death, his will was probated and his estate settled by his executors, who by the terms of his will turned the residue over to his widow, Mary A. Metcalf. The property consisted of notes, bonds and other investments, a number of parcels of real estate, consisting of both city property and farm lands, the gross value of which was about the sum of $100,000.

At the time Mr. Charles H. Metcalf died, Mr. Henry C. Hamilton was president of the bank and the officer through whom the deceased transacted his business. After the estate was settled Mrs. Metcalf was solicited by Mr. Hamilton to transact all of her business at the appellant bank and was promised the aid and assistance of the officers of said bank. The appellee counseled and advised with Mr. Hamilton concerning her lands and investments and the management of same until 1924 at which time Mr. Hamilton died. Subsequently Hal Metcalf, one of the appellants and cashier in the said bank, looked after and transacted the business for appellee. He rented her farms and her city property, collected and turned over rents to her, advised her concerning the investment of her uninvested capital, made purchases of bonds, for her and had access to her safety deposit box in the bank where her securities and valuables were kept.

During the year of 1923, appellant Metcalf made a report to appellee showing the status of her personal accounts as well as the status of the accounts of the estate of her deceased husband. It is admitted by appellant Metcalf that this report was prepared by him, acting in his official capacity as cashier of the State Bank of Girard, although he denies having had anything whatever to do with the estate of C. H. Metcalf as an officer of the bank. Sometime during the year 1926, appellant Metcalf felt that he should be paid for the services he was rendering to the appellee and upon his request to her for compensation an arrangement was entered into whereby he was to receive $100 annually. After this agreement was entered into he continued to advise appellee, to transact her business in relation to her real property and investments and to supervise her business affairs.

It is quite plain from the testimony that the appellant Metcalf had complete control over all of the secu-

rities belonging to the appellee; that he collected all the interest as it accrued upon her investments and placed the same to the credit of the appellee in the State Bank of Girard; that all of her funds were invested by him during the period that he was handling her business affairs and that she relied upon him implicitly in making such investments; that the appellant bank in which the appellant Metcalf was at all times an officer and large stockholder constituted the agency through which the purchase of securities was handled; and that he individually handled all of her personal financial transactions. It is quite apparent from the testimony of both the appellee and the appellant Metcalf that a fiduciary relationship existed between the appellee and the appellants.

The testimony shows that during the years 1930 and 1931 the appellant Metcalf purchased five bonds for the appellee and admits that upon one of such bonds the sum of $2.50 was paid to the appellant bank for commission for the sale of such bonds. Appellee testifies that all of said bonds were purchased without any consultation with appellee whatsoever although appellant Metcalf insists that appellee was fully informed concerning the purchase of the same. In September of 1930, the appellant Metcalf represented to the appellee that certain of her United States Government Liberty bonds were about to be called and advised that the same be sold immediately and the proceeds used in making other investments that would yield a greater income. The appellee had on hand about $41,000 worth of United States Liberty bonds and objected to the sale of the same and the exchange for other securities. She was induced, however, by the appellant Metcalf, to accompany him to St. Louis to the offices of the Mississippi Valley Trust Company of that city. Appellant Metcalf secured the bonds from her safety deposit box and they were taken along on the trip to St. Louis

and $17,000 worth of said United States bonds were exchanged for other securities. All of the transaction was carried on by the appellant Metcalf and the officer of the Mississippi Valley Trust Company without any participation on the part of appellee. The testimony of the vice president of the Mississippi Valley Company shows that a commission of $42.50 was paid to the appellant bank by way of commission for this transaction. There is some testimony in the record which indicates that the bank received some commission on the purchase of all bonds made by them but the only definite certain testimony is the item of $2.50 on the purchase of a Republic of Cuba Bond and the $42.50 on the securities purchased in exchange for the United States Liberty Bonds. While there is considerable evidence tending to show when the appellant Metcalf was acting in his individual capacity and when he served as an officer of the bank it seems clear that a joint agency on the part of the appellants is well established.

It is not claimed that appellee had knowledge of any commissions being paid to appellant bank in connection with any of the investments made upon her behalf and that she did not learn of such facts until in July, 1933, through investigation made by her grandson. After this information was conveyed to her, a formal notice of rescission of the action of the bank and of appellant Metcalf was served upon them on January 4, 1934, at which time all of the bonds involved were tendered back to the appellants and a request made for the return of the money which was paid by them for the purchase of same. The appellants refused to make any adjustment and all of the bonds with the exception of one Mayo Hotel bond, which she still retains were sold by the appellee in the open market at a substantial loss. The judgment entered by the trial court was for the difference between the amount paid by appellee for

these bonds and the amount which she received upon the sale of the same.

The appellants have not given careful attention to Rule 9 of this court and to Rule 39 of the Supreme Court of Illinois, which requires that in preparing briefs the concluding subdivision of the statement of the case shall be a brief statement of the errors relied upon for reversal but they do assert that the action of the appellants in looking after the affairs of Mrs. Metcalf was bona fide in every particular and that if the prices of bonds and securities had not declined during the years from 1930 to 1934 there would have been no complaint of the conduct of said appellants and no suit instituted by the appellee; also that the commissions paid to the appellant bank were so slight as to make little or no difference to the appellee. They further insist that the honesty and fairness of the appellants in dealing with the appellee was beyond question. The basis of appellee's complaint is that there was a fiduciary relationship existing between herself and the appellants and that she depended entirely upon their representations in the handling of her property. We believe that the evidence conclusively shows that such relation did exist during the time of the transactions in question; that the appellant Metcalf and the officers of the bank were all acting as the agents of appellee and each and all of them owed her the several duties arising out of such relationship.

The relation of principal and agent is one of trust and confidence and where such confidence is reposed and such relation exists it must be faithfully acted upon and preserved from any intermixture of imposition. The rule is the same no matter how large or how small the commission paid may be or whether the agent is a mere volunteer at a nominal consideration. *Perry v. Engel,* 296 Ill. 549. An agent cannot deal for his own advantage with the things purchased for his principal,

or become a seller or buyer of them, because of his confidential relation and his duty to disclose to his principal every fact, circumstance or advantage in relation to the purchase which may come to his knowledge. *Strong v. Lord,* 107 Ill. 25. If, without the knowledge and consent of his principal, the agent becomes the agent of the opposite party as well and undertakes by contract to bind his original principal, the law deems the original principal in that transaction to be practically unrepresented, and any bargain in his name or any act done on his account is usually voidable at his option. *Lerk v. McCabe,* 349 Ill. 348. The principal need not show himself injured, and his right to repudiate the transaction is not affected even by the good faith of the opposite party. *Chicago Title & Trust Co. v. Schwartz,* 339 Ill. 184.

In this case it is clear to us that the appellants were acting as the trustees of the property of the appellee and the law demands of such trustees the utmost fidelity. It is shown, without contradiction, that the exchange of the United States Bonds, belonging to appellee, for other and different securities was beneficial to the appellant State Bank of Girard and that it was not beneficial to her but on the contrary very detrimental. A full disclosure of the facts was not made to appellee and she was not informed of the interest of the bank in the transaction.

While there is some conflict in the testimony as to whether or not the appellee was fully informed on some of the other matters in controversy the trial judge had the opportunity of seeing and hearing the witnesses testify. By reason of that fact better opportunity was afforded him to determine the credibility of the witnesses than is given a court of review by a mere reading of the record. When the witnesses testified before the chancellor the reviewing court should not disturb his finding of the facts unless clearly erroneous. *Page*

*v. Kceves*, 362 Ill. 64. When the rules of law above stated are applied to the facts in this case, it is our judgment the trial court was fully justified in entering its decree and it is affirmed.

*Affirmed.*