Francis Corby, Appellee, v. Seventy-One Hundred Jeffery Avenue Building Corporation, Appellant.

Gen. No. 42,649.

444

Heard in the third division of this court for the first district at the April term, 1943.

Opinion filed March 21, 1945. Rehearing denied April 10, 1945. Released for publication April 10; 1945.

RATHJE, HINCKLEY, KULP & SABEL, of Chicago, for appellant; JOSEPH J. SULLIVAN, JR., of Chicago, of counsel.

JOHNSON & WILES, of Chicago, for appellee; WALTER E. WILES and FREDERICK W. EISENSTEIN, both of Chicago, of counsel.

MR. JUSTICE LUPE delivered the opinion of the court.

This was a suit for damages for breach of a contract of employment for the management of a building owned by defendant corporation. Defendant filed a counterclaim for moneys admittedly held by plaintiff belonging to the defendant which plaintiff retained to apply on his claim for damages against the defendant. The cause was tried by the court without a jury, resulting in a finding and judgment for plaintiff in the sum of $7,250.57 and costs and a finding and judgment for costs for plaintiff against the defendant on defendant's counterclaim. Defendant brings this appeal.

The property in question was located at 7100 Jeffery avenue, Chicago, Illinois, and was the subject of a reorganization proceeding in the United States district court for the northern district of Illinois, under section 77B of the Federal Bankruptcy Act. The building consisted of 8 stores, 10 offices and 64 apartments. A plan of reorganization was adopted on July 5, 1938 in the district court which provided amongst other things that a voting trust be created with three trustees, the trust *res* to be the common stock of the defendant corporation amounting to 2,115

shares. There were outstanding 2,800 shares of preferred stock of the corporation. Francis Corby, plaintiff, Charles S. Banks, and George D. Bockus were named by the court as trustees under the trust agreement. The district court on July 15, 1938 by its order confirmed the plan of reorganization and ordered, "the management and operation of the building of the debtor be under the direction and control of Francis Corby." Pursuant to this order a contract of employment was entered into by plaintiff with defendant on December 15, 1938, wherein the plaintiff was employed as manager and rental agent of the property for a period commencing December 15, 1938, and expiring July 15, 1948, a copy of which contract is marked Exhibit A and attached to the complaint filed herein. Under the terms of the contract the plaintiff was given general supervision of the property and was authorized to procure and maintain adequate liability insurance covering all persons that may be employed in and about the property, and in addition thereto, plaintiff as manager was to perform such other services as are usually and customarily rendered by agents operating similar properties in the city of Chicago; that he was to devote so much of his time as may be necessary for the successful operation of the building. It further provided that the corporation would pay plaintiff as manager as and for compensation for his services 3½ per cent of the gross cash receipts from the building, excluding, however, the rents obtained under the Walgreen drug store lease and from said lease he was to receive the sum of 1½ per cent of the rents received. He was charged with the duty of keeping books showing income and disbursements made by him and to render statements and monthly accounts to the corporation. The corporation was given the right to terminate the contract prior to its expiration upon the happening of: (1) the purchase by the corporation or the retirement of all its outstanding preferred

stock; (2) should the corporation make a bona fide sale of its property prior to the 15th day of July 1948; (3) if the corporation be dissolved; and (4) in the event the manager shall not perform his duties as manager in a faithful, diligent and efficient manner. It was further provided by the contract that in the event the manager desired to resign from the management of the property he may terminate the agreement at any time upon giving 30 days' written notice to the corporation. Clause 8 of the contract provided that the contract would be terminated without any further action either on the part of the manager or on the part of the corporation on the day default occurred under the terms, provisions and conditions of a mortgage under date November 14, 1938 to the Equity Life Assurance Society of the United States, which was executed to secure the payment of the corporation's note for the sum of $180,000.

On March 14, 1940, plaintiff ordered and placed fire and extended coverage insurance in the sum of $165,000 for the protection of the property in question. The new insurance was written in other companies than was the previous insurance and was for a term of five years, whereas the previous insurance was for the term of three years. The premium for the five-year term amounted to the sum of $4,580.40. The record shows on May 13, 1940, plaintiff paid on account of said insurance the sum of $1,138.12, and on said date furnished to the treasurer of the corporation a statement showing the transaction and the payment made. On September 19, 1940, the defendant canceled and terminated plaintiff's contract of employment. Defendant contends that the plaintiff's contract of employment did not authorize him to insure defendant's property or to determine the amount, term or company in which the insurance should be placed; that plaintiff's contract with defendant only authorized plaintiff to procure and maintain adequate liability insurance

covering employees, and therefore it was justified in terminating plaintiff's contract.

The record shows that after the employment of plaintiff by the corporation, plaintiff addressed a letter, under date January 5, 1939, to his cotrustees Charles S. Banks and George D. Bockus, suggesting to them that the three meet and discuss the general policy of carrying out the court's wishes concerning the property, and informing them that he had received a report from John Naghten & Company, insurance engineers, in reference to coverage by insurance of the personal and real property of the building corporation and various other kinds of insurance; that he had obtained binders for certain insurance which was a temporary coverage until he had an opportunity to meet with his cotrustees to make a final decision in the matter. In pursuance to said letter, on January 12, 1939, a meeting was had of plaintiff, Banks, and Bockus, as cotrustees. Plaintiff testified that at this meeting he submitted the insurance survey to his cotrustees and that they agreed that he order various kinds of insurance including fire and extended coverage on the property of the company. This, however, was denied by Banks and Bockus. From the testimony of Banks it appears that he agreed that $200,000 fire insurance was the amount that should be placed on the property, and he testified further if he remembered correctly he thought that Corby had read the insurance survey to those present at the meeting. Bockus, however, testified that the question of fire insurance was not discussed and he had no recollection that the insurance survey had been submitted. On January 27, 1939, plaintiff wrote his cotrustees a letter (plaintiff's Exhibit 6) wherein he reiterated the subject matter of the conference and listed the insurance coverage which he testified had been agreed upon by the three trustees in their conference of January 12, 1939. There appears in this list fire and extended

coverage on the building in the amount of $200,000. The other form of insurance listed in plaintiff's Exhibit 6, other than the fire and extended coverage, was procured from time to time by the plaintiff and the charge therefor is shown on the monthly statements rendered to the corporation by the plaintiff, to which the record shows no objection on behalf of the officers of the corporation. When plaintiff became manager of the property it was covered by insurance amounting to $165,000, $115,000 of which would expire on May 13, 1940, and $50,000 on June 26, 1940. In February of 1939 Banks was made treasurer of the corporation and Bockus secretary. The record indicates that Mathilda Hackel was president of the corporation but that plaintiff dealt with Banks and Bockus as officers and trustees with reference to the operation of the property. On March 14, 1940, plaintiff ordered $165,000 of fire and extended coverage insurance for the protection of the property. The new insurance was written in other companies and was for a term of five years, whereas the previous insurance was for a term of three years. The premium for the five-year term amounted to the sum of $4,580.40. On May 13, 1940, plaintiff paid on account of the premiums on $115,000 of said insurance the sum of $1,138.12 and furnished to the treasurer of defendant a statement showing the transaction and the payment made. On June 4, 1940, the directors of the corporation passed a resolution instructing the president to inform the plaintiff, ''that he was without authority to have written the policies of fire insurance totaling $115,000; further that he was without authority to pay the premiums on the same; further that he was without authority to determine the period for which any fire insurance policy should be written; further that he be requested to immediately have changed the term period for the fire insurance policies totaling $115,000 heretofore written at his direction to three years instead of five years; and that

he return to the treasurer of this corporation the premium difference at once; and further that he was without authority to have written on behalf of this company any insurance of any kind or character except liability insurance.'' The resolution further provided, "that noncompliance with the foregoing by Mr. Francis Corby will be considered a breach of conditions and restrictions contained in his management contract. , . . .'' The record indicates that plaintiff received a copy of this resolution on or about June 15, 1940. On July 24, 1940, at the office of Walter W. Duft, the attorney for the company, a meeting was held, which was attended by Francis Corby, plaintiff, Charles S. Banks and George D. Bockus as trustees and officers of the company. Plaintiff's attorney, Walter E. Wiles and attorney Walter W. Duft were also present. At his conference the placing of the insurance by Corby. was discussed, and it appears that the real complaint was that the insurance had been placed for a longer term than three years and that Banks and Bockus contended by reason of the length of the term, to-wit, five years, the premium for the payment of said insurance would deplete the cash available and thereby prevent the payment of dividends by the corporation, which the defendant should pay on the preferred stock, under the plan of reorganization. Plaintiff agreed that if the treasurer, Charles S. Banks, would furnish to him a statement showing the amount to be paid for premiums on the insurance would interfere with the declaration and payment of dividends, he, Corby, would have the policies changed, reducing the term to three years. Banks testified that Corby did not make such a request at that time, but that he made the request at a later date. However, the record shows that Banks sent a statement directed to plaintiff's attorney, Walter E. Wiles, wherein it is shown that on the basis of a five-year term after paying the premium thereon there remained only for the payment of

dividends the sum of $1,481.52 and that, if the term of the fire insurance had been reduced to a three-year term, the treasurer would have available for the payment of dividends the sum of $3,119.62 plus whatever refund from the insurance companies which they had received as advanced payments on premiums on said insurance. The amount of dividends to be paid as per the provisions of the plan of reorganization amounted to $3,008.40.

The record shows that Corby caused to be changed, on September 6, 1940, the policies of insurance from a five-year to a three-year term.

Corby testified that his monthly statement to the corporation showed the credit of excess premium which had been returned by the insurance company to him after said change had been made.

On September 19, 1940, the board of directors of the defendant corporation, without notice to Corby, adopted a resolution, Defendant's Exhibit 3, wherein it is stated that ''by reason of failure of Francis Corby to comply with the resolution of the company dated June 4, 1940, and by his failure to comply with the terms and provisions of said management contract, the management contract is hereby canceled and terminated.'' The resolution directed the president of the company to immediately notify plaintiff of the passage of the resolution and she was authorized to take such action as was necessary to carry out the terms of said resolution in order that the management contract of plaintiff and the defendant corporation dated December 15, 1938, be canceled and terminated. It is apparent that the defendant relied upon its right to cancel and terminate plaintiff's contract because of plaintiff's failure to comply with the resolution dated June 4, 1940. This is clearly shown by its resolution of September 19, 1940. In the resolution of June 4, 1940, plaintiff was requested to have changed the term period of the fire insurance policies totaling $115,000

from a term of five years to that of three years, and that he make return to the treasurer of the company of the premium difference. With this request the record shows that plaintiff complied. He ordered changed on September 6, 1940, the policies in question and he showed in his statement to the company the amount of the returned premium which he had received and which he accounted for to the defendant company. Defendant, without inquiry as to whether or not said policies had been changed as was directed by the resolution of June 4, 1940, canceled plaintiff's contract of employment because of his failure to comply therewith. Plaintiff was discharged on September 19, 1940, whereas he had complied with defendant's request on September 6, 1940. Surely there was no cause for cancellation or termination of plaintiff's contract for failure of his complying with the resolution of June 4. The record indicates that plaintiff had agreed to reduce the terms of the insurance from a five-year to a three-year period upon receiving information from Banks showing that it was necessary to make the change in order to pay the dividends on the preferred stock of the company. This information was not furnished to plaintiff or his attorney until August 29, 1940, by Banks the treasurer of the company. Plaintiff complied in having the change made within seven days thereafter. We feel under the circumstances that plaintiff complied with the request of defendant and that the termination and cancellation of his contract was unwarranted. It is argued by defendant that plaintiff had no authority to order any insurance other than that which was provided for by the contract. With this contention we agree, but defendant by its action did not rely upon the lack of authority of the plaintiff in ordering the insurance; its complaint was of plaintiff's action in placing the insurance coverage for five years, and it ordered plaintiff to have the same reduced to a three-year term. By defendant's resolu-

tion of June 4, 1940, it ratified the unauthorized act of the plaintiff in ordering said insurance, and it directed the plaintiff to have the term of said insurance changed from five to three years. By so doing we feel that the defendant waived the breach, if any existed, in placing the insurance.

■■ It is next contended by the defendant that the plaintiff was prevented from writing insurance and receiving a commission thereon, by reason of his fiduciary relationship as trustee and that the writing of the insurance and receiving commissions by him justified defendant in discharging the plaintiff and cancelling his contract. It is the general rule that a trustee must account for all property which may come to him by dealing with the trust property, even for bonuses or gratuities given him by strangers for contracts made with them in relation to the trust property (1 Perry on Trusts, section 209). However, a trustee may in some instances, under certain circumstances, be entitled to make a personal gain for himself out of the trust property if the same is done by agreement or with the knowledge and consent of the *cestui que trust*. (*Sherman v. White,* 62 Ill. App. 271.) The trust agreement in the instant case, which was approved by the court, provides as follows, in article III, section 6:

"The Trustees may act as directors or officers of the corporation. Any firm of which any of them may be a member, or any of them acting as an individual, or any corporation of which any of them may be stockholders, directors, officers or employees, may contract with the corporation and be or become pecuniarily interested in a matter or transaction in which the corporation may be concerned in any way as fully as though such Trustee was not a Trustee hereunder, provided that if any Trustee shall be a member of any such firm or be a stockholder, director, officer or employee or own in excess of one per cent (1%) of the stock of any such corporation, such Trustee shall give written notice to

the remaining Trustees five (5) days prior to the entering into of any such contract, matter or transaction by the corporation, of his interest in any such firm or corporation and the nature of the contract, matter or transaction. Such Trustee shall thereupon be released and discharged from any and all liability that may or might attach to him because of any such relationship.''

By virtue of this clause in the trust agreement, plaintiff was authorized to contract with the defendant and be or become pecuniarily interested in a matter or transaction in which the corporation may be concerned. The evidence shows that the statements sent by plaintiff to defendant marked defendant's Exhibits 6, 7 and 8 and bearing date March 14, 1940, September 14, 1940 and October 14, 1940, showed on their face that the insurance in question was placed by Francis Corby, the plaintiff, and the premiums were itemized for each policy. Defendant had notice and knowledge thereby that the plaintiff placed the insurance in question and under the contract it was immaterial whether or not he had any financial interest in the transaction and it mattered not under the terms of the trust agreement if plaintiff had received any benefits therefrom, as the trust agreement permitted the plaintiff to do business with the defendant corporation and to receive profits from transactions he may have directly or indirectly with it. The record indicates no complaint was made by the defendant to the plaintiff that the plaintiff had received a commission for the placing of the insurance in question, and if such a complaint had been made by the defendant we feel, under the trust agreement, it would not have been well-founded.

It is next argued that plaintiff failed to give five days' written notice as provided by section 6 of article III of the trust agreement to his cotrustees before the placing of said insurance by plaintiff. The record shows that no complaint had been made either

by the trustees or the corporation or any of its officers that the five-day written notice had not been given it. The only complaint made at any time was that the term of the insurance was for a longer period than three years. One cannot rely upon some other ground for the purpose of cancelling a contract than the one on which the attempt is made to terminate or forfeit the same. In the case of *Kuska v. Vankat,* 341 Ill. 358, at page 362, the court said:

"It is a well settled rule that when one party to a contract refuses to perform and bases his refusal on one ground he waives all other grounds, or is estopped, when suit is brought, from setting up other grounds for his refusal."

The record shows that Corby was acting for himself in the transaction and the defendant had knowledge thereof. Counsel for defendant cites two cases in support of his contention that the corporation was justified in discharging plaintiff, as plaintiff had violated his fiduciary relationship as trustee in the writing of the insurance and receiving commissions therefrom. The cases relied on are *Sherman v. White,* 62 Ill. App. 271, affirmed 168 Ill. 589, and *Metcalf v. Metcalf,* 286 Ill. App. 10. We have read these cases and agree with the law therein, applied to the facts in each of said cases. In the *Sherman v. White* case we find no contract or trust agreement such as the one that we have in the instant case. It lays down the general proposition of law that a trustee holding trust property to be insured must account as trustee for such commissions even though the trust estate suffered no loss by the transaction. In the instant case the plaintiff was permitted to deal with the corporation and become pecuniarily interested in any matter or transaction in which the corporation may be concerned. In *Metcalf v. Metcalf, supra,* no right was given to the agent to contract with the beneficiary and thus it differs from

the instant case. We agree with the law as laid down in the *Metcalf v. Metcalf* case under the facts in that case, where it is said by the court, at page 15:

"The relation of principal and agent is one of trust and confidence and where such confidence is reposed and such relation exists it must be faithfully acted upon and preserved from any intermixture of imposition. . . . An agent cannot deal for his own advantage with the things purchased for his principal, or become a seller or buyer of them, because of his confidential relation and his duty to disclose to his principal every fact, circumstance or advantage in relation to the purchase which may come to his knowledge."

In the *Metcalf* case the agent was not authorized to deal with his principal, which distinguishes it from the present case. We feel that the plaintiff under the trust agreement was authorized to contract with the defendant and permitted to become pecuniarily interested in the transaction, under the terms and provisions of the trust agreement.

Defendant contends that the court erred in assessing plaintiff's damages and that if plaintiff was entitled to damages the same should be limited to such damages as may have accrued to the date of trial. He argues that any damages allowed beyond the date of trial would be speculative and uncertain. At the time of the hearing of this cause on December 31, 1942, a judgment was entered in favor of plaintiff for damages from September 19, 1942 to July 15, 1948, the date of the expiration of the contract in question. We feel the court committed error in so doing. Under paragraph 8 of the contract of employment the corporation had the right to terminate the contract prior to the date of its expiration in the event (1) the corporation purchased or retired all of its outstanding preferred stock prior to that date; (2) the corporation should make a

bona fide sale of its property prior to the 15th day of July 1948; (3) the corporation was dissolved or liquidated; and (4) the plaintiff failed to perform his duties as manager in a faithful, diligent and efficient manner. It also gave the plaintiff, if he so desired, the right to resign and to terminate the agreement upon the giving of 30 days' written notice to the corporation. The contract further provided that it would be terminated without any further action upon the part of plaintiff or defendant on the day a default occurred under the terms, provisions and conditions of a mortgage given by the defendant to the Equitable Life Assurance Society, a corporation, to secure the payment of defendant's note in the sum of $180,000. It plainly can be seen that any one of the many reasons mentioned for the termination of the contract could have taken place subsequent to the date of trial and prior to the expiration of the contract. The corporation had the right to terminate the contract at any time in the event it purchased or retired all of its outstanding preferred stock. This it could have done had it such capital in the future so to do. The corporation could have sold the property at a bona fide sale, and this is possible at any time prior to July 15, 1948, which would give rise to the termination of the contract of employment. The contract would have been terminated in the event the corporation was dissolved or liquidated. This could have taken place any time after the trial. Should there have been a default under the terms, provisions and conditions of the mortgage given to the Equitable Life Assurance Society, that would have terminated the contract. Other contingencies as set forth under clause 8 of the contract could have caused its termination.

Plaintiff's contract of employment required his service as manager. He had a right, however, to delegate part of his duties to others, but the supervision and

management under his contract rested with him. The contract was not assignable and was personal between him and his employer. Upon his death or if he became incapable of performing his duties as manager before the expiration of the term of his employment, the contract terminated.

We feel, under the facts and circumstances in this case, that the actual loss of plaintiff between the date of trial and the date of the expiration of the contract could not be definitely determined and from the very nature of things any amount allowed would be largely speculative.

We adopt the rule as laid down in the case of *Mount Hope Cemetery Ass'n v. Weidenmann*, 139 Ill. 67, limiting damages to the date of trial. The plaintiff has a right, if he so desires in the future to institute proceedings from time to time during the term of the contract for damages which he may have sustained, or he may wait until the expiration of the contract and recover for such damages, if any, as he may have sustained from December 31, 1942, to the date of the expiration of the contract.

The evidence shows that plaintiff in the management of defendant's property employed as resident agent Swan-Lorish, Inc., real estate agents in Chicago, to collect the gross rent and remit the same to plaintiff. Under plaintiff's contract with the defendant he was to receive 3½ per cent of the gross rent excepting a certain lease to Walgreen and on that lease his commission was to be 1½ per cent. The evidence shows that the average total commission under the contract, based upon gross rental for the 25-month period between September 1, 1940 and September 30, 1942, amounted to about $133.40 per month, of which amount Swan-Lorish, the resident agent, received an average monthly commission of $51.70 for its services, and the balance, amounting to $81.70 per month, belonged to

plaintiff, making a total due plaintiff Corby on the day of trial of $2,042.50. In addition thereto, Corby claimed that he was entitled to 3½ per cent upon the moneys he received under a contract with the Meter Service Corporation, under which contract the Meter Service Corporation purchased electricity at a wholesale rate and sold the same to defendant's tenants at a normal retail rate. Plaintiff's commission therefrom would have amounted to $3.21 per month, or a gross total of $80.25 between the date of Corby's discharge and the date of trial. To this should be added the sum of $600, as trustee's fees that Corby was entitled to receive for the two-year period, at the rate of $300 per year, making a grand total due plaintiff from defendant of $2,722.75. Corby, however, was withholding money that belonged to the defendant amounting to $1,373.42, as alleged in his complaint. This amount should be deducted from the $2,722.75, leaving a balance due Corby as of the date of trial of $1,349.33.

Judgment affirmed on plaintiff filing a remittitur in the sum of $5,901.24 within 10 days; otherwise judgment reversed and cause remanded to the superior court of Cook county with directions to proceed in a manner not inconsistent with this opinion.

*Judgment affirmed upon filing of a remittitur; otherwise reversed and remanded.*

BURKE, P. J., and KILEY, J., concur.