MARTIN LEWIS, Plaintiff-Appellee, v. LOYOLA UNIVERSITY OF CHICAGO, Defendant-Appellant.

First District (3rd Division) Nos. 84—1260, 84—1808 cons.

Opinion filed May 21, 1986.—Modified on denial of rehearing November 26, 1986.

William H. Oswald and Leon S. Conlon, both of Loyola University, and Baker & McKenzie, both of Chicago (Francis D. Morrissey, Daniel J. O'Connor, Marie A. Monahan, and Stephen R. Ayres, of counsel), for appellant.

Joseph P. Spiezer, of Rockford, and Aaron M. Spiezer, of New York, New York, for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Defendant, Loyola University, an Illinois not-for-profit corporation, appeals from two orders entered against it in an action brought by the plaintiff, Martin Lewis, M.D., for breach of contract. Separate trials were held on the issues of liability and damages. On April 19, 1984, the trial court found that defendant breached its employment contract with plaintiff by depriving him of tenure consideration. On July 13, 1984, the court ordered defendant to pay plaintiff $36,492 in damages sustained in the school year ending June 30, 1984, and further ordered it to pay plaintiff $100,000 annually, until he reaches age 65, is disabled physically or mentally, or dies. The $100,000 sum is to be adjusted annually to the Federal cost-of-living index, and offset by any income plaintiff earns during the year.

The issues presented for review are: (1) whether letters from the dean of defendant's medical school to plaintiff were properly admitted as evidence of the parties' contract of employment; (2) whether the trial court's findings regarding plaintiff's entitlement to tenure were manifestly erroneous; (3) whether the award of damages is speculative and therefore erroneous as a matter of law; and (4) whether this court has jurisdiction over the instant appeal.

In June 1979, plaintiff was approached by defendant's search committee for consideration as chairman of the pathology department of defendant's Stritch School of Medicine. Negotiations ensued over several months. On September 20, 1979, Dean Clarence N. Peiss sent plaintiff a letter outlining the terms of an offer. The letter was written in the form of numbered paragraphs. It addressed staffing, salary

(including an administrative stipend and practice plan supplement), departmental space allocations and funding, and tenure. Specifically, paragraph 8 included a commitment to recommend plaintiff for early tenure consideration at the first opportunity after his licensure by the Illinois State Board of Registration and Education. Dr. Lewis replied by letter with some questions and the negotiations continued.

On February 18, 1980, Dean Peiss sent plaintiff a second letter. The letter was in the same format as the letter of September 20, updating certain paragraphs and leaving others "as stated in the September 20, 1979 memo." In the February 18 letter, paragraph 8 read: "On the assumption that both you and the medical school administration will be satisfied in this relationship, I will propose early approval of tenure for you in September 1981." The letter also stated that if plaintiff accepted the offer, Dean Peiss would submit his recommendation to the committee on faculty appointments and a formal letter of appointment would be sent to him.

Plaintiff received the letter of appointment dated May 14, 1980. The letter was a one-page document listing plaintiff's teaching salary and administrative stipend, and appointing him as professor of pathology for the period July 1, 1980, through June 30, 1981. The letter of appointment incorporated by reference the faculty handbook included with the letter. The transmittal letter accompanying these documents detailed plaintiff's salary, including a supplement of $48,000 per year under the Loyola Medical Practice Plan. Plaintiff accepted the chairmanship and signed the letter of appointment on June 19, 1980.

The following year plaintiff accepted a letter of appointment as professor of pathology for the period July 1, 1981, through June 30, 1982. In April 1982, Dean Peiss resigned to return to full-time teaching. On April 15, 1982, plaintiff was sent a letter of appointment for the period July 1, 1982, through June 30, 1983. On May 19, 1982, plaintiff received a letter relieving him of his duties as department chairman effective May 19, 1982, and, on May 25, plaintiff was advised that his 1982-83 faculty contract was terminal and that his appointment would not be renewed after June 30, 1983.

Dean Peiss failed to submit plaintiff's name for tenure consideration in September 1981. Plaintiff testified that in the fall of 1981, he received a telephone call from the dean who told him he had forgotten to present plaintiff's name for tenure. When plaintiff asked whether that made any difference, or whether there was a problem, Dean Peiss assured him that it was an oversight and that plaintiff's name would be submitted for tenure the following year. Dean Peiss' testimony corroborated plaintiff's impression that Dean Peiss had been

busy and had forgotten to submit the name. Although, as department chairman, plaintiff could have submitted his own name for tenure consideration, he testified that he did not think it was his place to do so and, further, that after being reassured by Dean Peiss that it would be done routinely at the next available opportunity, he believed there was no need to take any action himself.

■ We first address the jurisdictional issue. Citing Supreme Court Rule 303(a)(1) (94 Ill. 2d R. 303(a)(1)), plaintiff contends that this court lacks jurisdiction because defendant's notices of appeal were filed before the disposition of plaintiff's post-trial motion.

Supreme Court Rule 303(a)(1) requires that notice of appeal be filed within 30 days after the entry of a final judgment or, if there has been filed a timely post-trial motion directed against the judgment, within 30 days after the entry of an order disposing of the post-trial motion. Defendant's notices of appeal were filed on May 18, 1984, and July 19, 1984. On July 23, 1984, plaintiff filed his motion for findings of fact and conclusions of law. That motion was denied July 26, 1984.

For purposes of Rule 303(a)(1), a post-trial motion must be one which specifically requests one or more of the statutorily authorized types of relief consisting of rehearing, retrial, modification or vacation of judgment. (*Walker v. Board of Police & Fire Commissioners* (1979), 77 Ill. App. 3d 958, 397 N.E.2d 2; *Tomaska v. Barone* (1968), 104 Ill. App. 2d 356, 244 N.E.2d 327.) In the instant case, paragraph 2 of plaintiff's motion states, "Plaintiff accepts the judgment of [the circuit court] and is willing to abide by the terms and conditions of the judgment order." The relief requested is for entry of plaintiff's proposed findings of fact and conclusions of law consistent with the judgment entered. Plaintiff's post-trial motion was thus not "directed against the judgment" as required by Supreme Court Rule 303(a)(1), and the instant appeal is therefore properly before this court.

■ Defendant's first contention on appeal is that the trial court erred in admitting into evidence, as part of the employment contract, the two letters to plaintiff from Dean Peiss. Defendant's position is that the employment contract consists solely of the May 14, 1980, letter of appointment and the faculty handbook incorporated by reference therein. Defendant argues that the terms of the contract are clear and unambiguous, and it was thus error to consider the two previous letters to vary its terms. It is well settled that where contract terms are clear and unambiguous, they must be given their ordinary and natural meaning and no parol evidence can be considered to vary the meaning of the terms. (*Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 422 N.E.2d 879.) It is also well

established that preliminary negotiations to a contract are generally merged into the final written agreement and that agreement is presumed to include all material terms. *Howard A. Koop & Associates v. KPK Corp.* (1983), 119 Ill. App. 3d 391, 457 N.E.2d 66.

■■ ■ We find defendant's parol-evidence argument premature in this instance. Where a contract is not expressive of the complete agreement and understanding of the parties, consideration of antecedent proceedings does not serve to vary the contract terms but exemplifies the terms of the agreement. Further, all relevant evidence may be considered to determine whether a particular writing is the complete agreement of the parties. (*Maas v. Board of Trustees of Community College District No. 529* (1981), 94 Ill. App. 3d 562, 418 N.E.2d 1029.) Additionally, whether a writing which contains the essential terms of a contract but which contemplates the later execution of a formal document is a contract or merely negotiation depends on the intent of the parties. *Inland Real Estate Corp. v. Christoph* (1981), 107 Ill. App. 3d 183, 437 N.E.2d 658.

■■ In the instant case, the record discloses conversations, meetings, and correspondence over a period of a year. It cannot seriously be argued that a form contract for a teaching position, albeit personalized with plaintiff's name and an additional sum described as compensation for administrative duties, embodied the complete agreement and understanding of the parties. Nothing in the form contract reflects the position plaintiff accepted, with its attendant considerations of staffing, long- and short-term funding or physical space. Indeed, even the letter of transmittal, which defendant would also exclude from consideration, reflects part of plaintiff's compensation for participation in the Loyola Medical Practice Plan, which is not covered in the formal letter of appointment.

In his letters to plaintiff, Dean Peiss stated that should plaintiff accept the offer as outlined, a formal letter of appointment would be forthcoming. We believe that this evidences the requisite intent that the letter of September 20, 1979, as modified by the letter of February 18, 1980, was part of the contract and not merely negotiation. We therefore agree with the trial court that the letters were properly considered as part of the employment contract.

■■ Defendant next contends that the trial court's finding that plaintiff would have been tenured pursuant to the terms of the employment contract was manifestly erroneous. Defendant first argues that the letter of appointment and faculty handbook govern the granting of tenure and nothing in those documents constitutes a promise to plaintiff of tenure. Our determination above, that the parties' contract

includes the letters from Dean Peiss promising to recommend tenure in September 1981, renders further discussion of this argument unnecessary.

■ Defendant also maintains that even if the letters are part of the contract, those promises do not constitute a guarantee of tenure. Rather, defendant argues, they are expressions of goodwill and are not an enforceable promise creating a contractual obligation on the defendant's part to grant tenure.

It is undisputed that plaintiff was not tenured at the time of his termination, nor does plaintiff contend that Dean Peiss could have granted him tenure himself. The evidence adduced at trial, however, established that plaintiff's name was not submitted for tenure in 1981 solely because of an oversight, and that Dean Peiss, as the trial court noted in its order, acknowledged the error and pledged to correct it the following year. There was also testimony to the effect that objective criteria are used when considering whether to grant tenure and that plaintiff met those standards.

Although defendant's provost, Richard Matre, testified that occasionally a dean's recommendation is denied tenure, he conceded that it was an uncommon situation. It is the province of the trial court, when sitting without a jury, to resolve disputed questions of fact and to determine the credibility of witnesses and the weight to be accorded their testimony, and we will not substitute our judgment thereon unless the opposite conclusion is clearly evident. (*Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938, 466 N.E.2d 977.) Indeed, the trial court's findings will not be disturbed in a nonjury case where the testimony is contradictory unless those findings are contrary to the manifest weight of the evidence. (*Norwood Builders v. City of Des Plaines* (1984), 128 Ill. App. 3d 908, 471 N.E.2d 634.) We believe that the evidence detailed above amply supports the trial court's finding that plaintiff would have been tenured pursuant to the contract but for Dean Peiss' oversight. The court's finding was thus not against the manifest weight of the evidence.

■ Defendant also contends that the trial court's award of damages was speculative and improper. The proper measure of damages is the contract price, less what the employee earned or could have earned. (*Doherty v. Schipper & Block* (1911), 250 Ill. 128, 95 N.E. 74.) In Illinois, however, the damages awarded upon breach of an employment contract are limited to such damages as plaintiff may have accrued up to the date of trial, and damages beyond that date are disallowed due to their speculative and uncertain nature. (*Mount Hope Cemetery Association v. Weidenman* (1891), 139 Ill. 67, 28 N.E. 834;

*Corby v. Seventy-One Hundred Jeffrey Avenue Building Corp.* (1945), 325 Ill. App. 442, 60 N.E.2d 236.) In the present case, the trial court awarded $36,492 for damages plaintiff sustained during the year ending June 30, 1984, and accruing up to the time of trial. These damages were properly awarded.

■ The trial court also awarded plaintiff $100,000 annually from August 1985 until he reached age 65, became disabled, or died, less his gross earnings. The $100,000 was to be adjusted annually to the Federal cost-of-living index. The trial court erred in awarding these future damages, as they are too speculative and uncertain. (See *Mount Hope Cemetery Association v. Weidenman* (1891), 139 Ill. 67, 28 N.E. 834; *Corby v. Seventy-One Hundred Jeffrey Avenue Building Corp.* (1945), 325 Ill. App. 442, 60 N.E.2d 236.) Such damages are disallowed in Illinois because they are uncertain, *e.g.*, whether the employee may earn more than the contract price following trial; whether the contract could have been properly terminated by either party subsequent to the date of trial and prior to the contract's expiration; or whether the employee might become incapable of performing the duties before the expiration of the contract. Thus, plaintiff may only recover his actual loss. (*Mount Hope Cemetery Association v. Weidenman* (1891), 139 Ill. 67, 28 N.E. 834.) The loss plaintiff suffers between the date of trial and the date of expiration of the contract is, by the very nature of things, largely speculative. *Corby v. Seventy-One Hundred Jeffrey Avenue Building Corp.* (1945), 325 Ill. App. 442, 60 N.E.2d 236.

Here, plaintiff's losses subsequent to the date of trial are highly speculative for several reasons. The $100,000 awarded by the trial court apparently derives from the $48,000 faculty salary defendant paid plaintiff in the 1982-83 academic year, and the $52,000 he received from the Loyola Medical Practice Plan. The future faculty salary is speculative because plaintiff might have quit before reaching age 65; or defendant might have terminated his employment for cause or for financial exigency. Moreover, plaintiff's base teaching salary was subject to annual decreases, and there was no evidence that defendant uses faculty salary schedules, guaranteed pay increases, or Federal cost-of-living index adjustments. Instead, faculty salaries are negotiated annually depending on merit and budgetary considerations. Some tenured faculty receive raises, others receive reductions, and others remain the same. Any basis for determining plaintiff's teaching salary following the date of trial, therefore, is highly speculative.

Plaintiff's future income from the Loyola Medical Practice Plan would also be uncertain. The Loyola Medical Practice Plan is separate compensation for a faculty member and is unrelated to tenure. In-

stead, it is related to a physician's earnings from clinical practice. This plan is subject to Federal regulations of pathology billing practices and resulting budgetary problems for defendant. Plaintiff's future income generated from his clinical practice and included under this plan, therefore, might have fluctuated greatly. Plaintiff, for example, might have chosen to focus extensively on academic and research-related activities and substantially reduce or terminate his clinical practice. Thus, over one-half of the annual award was based on this highly speculative and uncertain income. We hold that the trial court erred in awarding damages beyond the date of trial.

 We believe that defendant's reliance on *Carter v. Catamore Co.* (N.D. Ill. 1983), 571 F. Supp. 94, is misplaced. The *Carter* court construed Rhode Island law and then stated in *dicta* that our supreme court indicated in *Doherty v. Schipper & Block* (1911), 250 Ill. 128, 95 N.E. 74, that it no longer followed the *Mount Hope* damages rule. In addition to holding that damages are limited to the date of trial, *Mount Hope* stands for the proposition that where the employment contract was to be paid in installments, an employee can file a series of installment suits, and one suit is not a bar to subsequent installment suits. *Doherty* did not address the issue of whether an employee's damages are limited to those accrued up to the date of trial. *Doherty* did, however, hold that a cause of action may not be split up into separate installment suits, and the filing of one installment suit acts as a bar to subsequent installment suits. This issue is not before us. (See also *Gasbarra v. Park-Ohio Industries, Inc.* (7th Cir. 1981), 655 F.2d 119.) *Doherty* does not disturb the *Mount Hope* damages rule upon which we rely. The *Carter* court, however, went on to state in *dicta* that even if it applied Illinois law it is not clear whether Illinois would allow the employee to bring suit for the entire contract period. That court held that, under Rhode Island law, it believed it was a sounder approach to permit recovery for the entire contract term. (See generally Annot., 91 A.L.R.2d 682 (1963).) We find that under *Mount Hope*, Illinois does not permit the employee to recover for the entire contract term. As we have stated, Illinois limits recovery to damages sustained up to the time of trial, finding future damages to be speculative and uncertain.

In sum, we find that the evidence supports the trial court's finding that defendant breached its employment contract with plaintiff, and that the trial court properly entered judgment in the amount of $36,492 for damages incurred to the date of trial. We hold, however, that the trial court erred in awarding damages beyond the date of trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part. The cause is remanded with directions to enter judgment in accordance with the holdings of this opinion.

Affirmed in part, reversed in part, and remanded with directions.

McNAMARA and WHITE, JJ., concur.