OPINION OF THE COURT
William P. McCooe, J.
Plaintiffs are moving for summary judgment and ancillary relief in a declaratory judgment action which seeks a declaration that the defendant is the successor in interest of the corporate plaintiff and responsible to defend and indemnify for an alleged tortious act of the corporate plaintiff committed prior to a “Reorganization”. The corporate plaintiff Holt-Howard Associates, Inc. (Holt), transferred its assets to the defendant General Housewares Corp. (General) pursuant to the terms of a “Reorganization” agreement. The remaining individual plaintiffs were shareholder-employees of Holt and the plaintiff Grant-Howard Associates was a partnership composed of two of the individual plaintiffs. The corporate reorganization took *705 place in 1969 and two separate personal injury actions by a party injured in 1974 were commenced naming the plaintiffs herein together with General as defendants. The injury was alleged to have been caused by a defective product (a ceramic pitcher) imported and sold by Holt prior to the “Reorganization”.
General contends that it has no responsibility to defend or indemnify for any act committed by Holt prior to the reorganization since it is insulated by the terms of the agreement for a mere sale of assets. Plaintiffs contend that the reorganization obligated General to defend and indemnify for any act committed by Holt prior to the sale under the terms of the agreement and the acquisition constituted a merger rather than a mere sale of assets.
This issue transcends the intent of the parties to the business arrangement since the rights of an injured third party are involved and poses the question whether as a matter of law the legal effect of the acquisition subjects the defendant General to liability to the third party in a product liability case. The facts are undisputed. On July 15, 1969, General, Holt and the individual shareholders of Holt entered into an agreement entitled Plan of Reorganization and Agreement whereby General purchased all of Holt’s assets, all of the assets of Holt’s subsidiaries and assumed substantially all of Holt’s and its subsidiaries’ liabilities “which exist at the closing date”. The reorganization agreement provides the reorganization between General and Holt was intended to be and was a tax free “organization within the meaning of Section 368 (a) (i) (c) of the Internal Revenue Code of 1954 as amended.” Consideration for the sale consisted exclusively of 45,000 shares of General’s common stock paid directly to Holt’s shareholders on the closing date (August 18, 1969), and an additional 45,000 shares which were held in escrow and eventually paid out to the former shareholders of Holt during their five years’ tenure as full-time employees of General. The transfer of the additional 45,000 shares was geared to the performance of the Holt-Howard Division of General which was created on the closing date and which was managed by the former officers and directors of Holt. General used the names Holt-Howard Associates and Holt- *706 Howard as trade names. On the closing date and as part of the assets transferred, all of Holt’s leasehold interests covering office^ warehouse and showroom spaces, and insurance policies were assigned to General and the business of Holt, including its product line, continued under General’s ownership. The uninterrupted continuation of the business was assured by all of Holt’s employees becoming employees of General on the closing date and the officers and directors of Holt entered into five-year employment agreements with General which contained, among other things, five-year restrictive covenants which prevented the former officers and directors of Holt from competing in any way with what then became the Holt-Howard Division of General. The reorganization agreement required the immediate dissolution of Holt which dissolution was accomplished pursuant to the laws of Connecticut on August 27, 1969, less than 10 days after the closing date.
The general rule is that the mere sale of corporate property by one company to another does not make the purchasers liable for the liabilities of the seller not specifically assumed (Hartford Acc. & Ind. Co. v Canron, Inc., 43 NY2d 823). The court in Hartford inferentially adopted the four exceptions to this rule which are generally recognized in most jurisdictions in product liability cases. The absence of any controlling cases in New York, or even Connecticut where the reorganization agreement was entered into, necessitates a consideration of authority from other jurisdictions.
Liability for the obligations of a selling corporation may be imposed on the purchasing corporation when (1) the purchasers expressly or implicitly agree to assume such obligations; (2) the transaction amounts to a consolidation or merger of the selling corporation with or into the purchasing corporation; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability for such obligation (Knapp v North Amer. Rockwell Corp., 506 F2d 361, 363-364; Shane v Hobam, Inc., 332 F Supp 526, 527-528; Shannon v Langston Co., 379 F Supp 797, 801; Ladjevardian v Laidlaw-Coggeshall, Inc., 431 F Supp 834).
*707 The plaintiff advances the first three named exceptions and a fifth exception, the product line standard. These four grounds will be considered.
The first ground alleged is that the defendant expressly or implicitly assumed the liability. Paragraph 6 of subdivision (b) of the reorganization agreement provides: “On the Closing Date, Housewares agrees to assume, perform and discharge (i) all of the obligations and liabilities of Associates which exist at the Closing Date, except for such of those liabilities as are excluded from this assumption by the following Section 6(c).”
There was no “obligation and liability in existence at the closing date”. The alleged injury occurred five years later. The language expressly excludes this liability and there is no showing of any implied agreement to assume this obligation.
The second ground claimed is that there was a de facto merger. The characterization of the acquisition by the parties is not the controlling factor. It is the terms, substance and legal effect of the agreement which should be considered in determining whether a de facto merger took place. “A successor corporation is liable for the debts of its predecessor where there is a merger or consolidation of the two firms. A merger contemplates the ‘absorption of one corporation by another which retains its name and corporate identity with the added capital, franchises and powers of a merged corporation.’ Absent compliance with statutory requirements a merger may be considered de facto.” (Ladjevarian v Laidlaw-Coggeshall, Inc., supra, at p 838.)
A case in point is Shannon v Langston (supra).
In June, 1967, the plaintiff in Shannon had been injured by a defective piece of machinery manufactured by Langston prior to the sale of its assets to Harris Intertype in 1966. The sole issue was whether the asset transfer between Langston and Harris constituted a de facto merger thereby rendering Harris, the purchasing corporation, liable for any injuries resulting from the machinery shipped by Langston prior to the closing date. The relevant facts are identical to the instant case. (1) The organization and operations of the Langston Company were continued sub *708 stantially unchanged after the company was taken over by Harris; (2) The operating management remained substantially the same, and substantially all the Langston employees became employees of Harris; (3) The corporate headquarters remained the same.
In granting summary judgment determining that Harris had assumed all the liabilities of Langston as a matter of law, the court summarized the four elements of a de facto merger, each of which describes the results of the reorganization between General and Holt. (1) The continuity of management, personnel, physical location, assets and general business operations as the Holt-Howard Division of General Housewares Corporation; (2) The continuity of shareholders, by paying for the acquired assets by stock of the purchasing corporations; (3) The selling corporation quickly dissolved its ordinary business operations; (4) The purchasing corporation assumed those liabilities and obligations of the selling corporation necessary for the uninterrupted continuation of normal business operations of the seller corporation.
The court concluded that where, as here, the liability in dispute falls within the products liability area, certain public policy considerations mandate a finding of a de facto merger, and the resulting liability of the purchasing corporation. It received all the advantages of an established going concern, continuing substantially unchanged, including reputation, and established customers. Public policy requires that the purchasing party, having received the benefit of a going concern should also assume the costs. (Knapp v North Amer. Rockwell Corp., supra; Wilson v Fare Well Corp., 140 NJ Super 476; Western Resources Life Ins. Co. v Gerhardt, 553 SW2d 783 [Tex]; Turner v Bituminous Cas. Co., 397 Mich 406.)
The third ground advanced is that General is a “mere continuation” of Holt. Liability for the obligations of a selling corporation may also be imposed on the purchasing corporation when the purchasing corporation is merely a continuation of the selling corporation. (Knapp v North Amer. Rockwell Corp., supra; Shane v Hobam, Inc., supra; McKee v Harris-Seybold Co.,Div. of Harris-Intertype Corp., 109 NJ Super 555.) General acquired all the employees and *709 assets of Holt. The affidavit of Gordon R. Erickson, defendant’s general counsel, states: “After the Closing Date, General Housewares Corp., used the assets which it purchased from the Holt-Howard Associates, Inc., in the conduct of the Holt-Howard Division of General Housewares Corp. General Housewares Corp., used the names Holt-Howard Associates and Holt-Howard as trade names.” It is clearly the same business with a different name on the door.
The criteria for determining whether an acquisition is simply a sale or transfer of assets or a merger or a continuation of the business are established. The difficulty is in its application because generally one or more of the criteria are absent. The instant case is a classic illustration of the presence of all the criteria. The key is how closely the acquiring corporation structurally resembles the acquired corporation. The facts clearly show that Holt-Howard Division of General Housewares Corp. is a continuation of Holt-Howard Associates, Inc.
The fourth ground advanced is the product line standard germinated in Ray v Alad Corp. (19 Cal 3d 22). The presence of two accepted theories of recovery is sufficient without reliance on this ground but it is noted for its existence and not for its present general acceptance.
Ray arose from an injury due to a defective ladder subsequent to the sale of the assets of a ladder manufacturer for cash wherein the sales agreement contained only a limited assumption of liabilities relating to materials and orders. The selling corporation was dissolved approximately 60 days thereafter but its manufacturing operation was continued with the general manager continuing as a consultant for about six months. After finding that none of the four customary exceptions to the rule immunizing the purchaser of corporate assets from liability was present the court went on to consider the public policy issues involved in strict liability. These include “(1) the virtual destruction of the plaintiff’s remedy against the original manufacturer * * * (2) the successor’s ability to assume the original manufacturer’s risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility” as a burden to good will it received. (Ray v Alad Corp., supra, *710 p 31.) The court deemed the successor liable after reviewing the dissolved and assetless condition of the original manufacturer, the silence of the record as to insurance, the availability of resources to the successor and the fairness of the successor taking the benefit with the burden.
Necessity is the mother of invention and just as Bichler v Lilly & Co. (55 NY2d 571) followed Sindell v Abbott Labs. (26 Cal 3d 588), at the propitious moment, Ray may well be hailed as the futuristic landmark case which shifted the approach from corporate theories to a tort theory in determining successor liability. (Ramirez v Amsted Inds., 86 NJ 332; see, also, 1 Frumer and Friedman, Products Liability, § 5.06[4]; Kimble and Lesher, Products Liability, § 39.) There is an increasing recognition that the injured party may possess a cause of action but is unable to find a responsible defendant. The ability of corporate entities to contract among themselves to insulate themselves from liability or to file for bankruptcy spotlights a problem that has slipped through the cracks and requires a solution in either the legislative or judicial forum.
General is liable to plaintiffs for all costs, including attorney fees incurred, in both defending against the claims asserted in the personal injury action as well as the costs arising from the present action.
The motion for summary judgment is granted. There are no triable issues of fact. In view of this disposition, the counterclaim seeking indemnity is dismissed.
Plaintiffs are entitled to a declaration: (1) That General is the successor in interest to Holt and has assumed any liabilities and obligations of Holt arising out of the underlying personal injury to defend and indemnify; (2) That General is obligated to plaintiffs for all costs and expenses, including attorneys’ fees, incurred or to be incurred, by plaintiffs in defending against the underlying personal injury action.