ABRON FENDERSON, Plaintiff-Appellant, v. ATHEY PRODUCTS CORPORATION, Kolman Division, Defendant-Appellee.

First District (3rd Division)   No. 1—90—0680

Opinion filed October 9, 1991.

---

*Justice White participated in this opinion prior to his retirement.

James L. Farina and J. Dillon Hoey, both of Chicago, for appellant.

Locke E. Bowman III, of Silets & Martin, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff Abron Fenderson (Fenderson) brought this personal injury action against defendant Athey Products Corporation, Kolman Division (Athey), to recover damages incurred as a result of negligence in the design and manufacture of a conveyer manufactured by Kolman Manufacturing Company (Kolman). Athey filed a motion for summary judgment on the basis that it is not liable for Fenderson's injuries because it did not design or manufacture the conveyer, and it did not assume any of Kolman's liabilities not specifically listed on Kolman's balance sheet when it had purchased substantially all of Kolman's assets. Fenderson filed a motion for partial summary judgment on the basis that Athey's purchase of Kolman's assets constituted a *de facto* merger and that Athey as-

sumed all of Kolman's liabilities, including personal injury claims. The trial court granted summary judgment in favor of Athey. We reverse the summary judgment in favor of Athey, enter partial summary judgment in favor of Fenderson, and remand for further proceedings.

In October 1964, Athey entered into an asset purchase agreement with Kolman whereby Athey agreed to purchase substantially all of Kolman's assets, including land, buildings, fixtures, machinery, inventory, cash and receivables for a purchase price which consisted of cash, a nine-year interest-bearing corporate note, and shares of Athey's common stock. The agreement provided that only those liabilities listed on Kolman's balance sheet as of September 30, 1964, would be assumed by Athey, with the exception of Federal income taxes.

On September 22, 1984, Fenderson's right arm was severely injured when his clothes became caught in a conveyor manufactured by Kolman in 1961. On June 9, 1986, Fenderson filed a complaint in the circuit court naming solely Kolman as a defendant. The complaint and summons were served upon an agent of Athey. Athey filed an appearance, although Kolman had not been a legal entity for over 20 years. Subsequently, the complaint was amended to name Athey as the defendant, and the motions for summary judgment and partial summary judgment were filed.

██ The critical issue on appeal involves successor corporate liability. The general rule in Illinois is that when a company sells its assets to another company, the purchasing company is not liable for the debts and liabilities of the purchased company merely by reason of its succession. (*Green v. Firestone Tire & Rubber Co.* (1984), 122 Ill. App. 3d 204, 209, 460 N.E.2d 895, 898.) Several recognized exceptions exist, however, which will impute liability to the purchasing company, including:

(1) Where there has been an express or implied agreement of assumption;

(2) Where the transaction amounts to a consolidation or merger, including a *de facto* merger, of the purchaser and seller corporations;

(3) Where the purchaser is merely a continuation of the seller; or

(4) Where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations.

See *Manh Hung Nguyen v. Johnson Machine & Press Corp.* (1982), 104 Ill. App. 3d 1141, 1143, 433 N.E.2d 1104, 1106.

■ Here, Fenderson contends that the sale and purchase transaction between Kolman and Athey was a *de facto* merger. Almost every jurisdiction in the United States, including Illinois, has applied the same four factors to determine whether a *de facto* merger has occurred. (See *Kramer v. Weedhopper of Utah, Inc.* (1990), 204 Ill. App. 3d 469, 562 N.E.2d 271; *McCarthy v. Litton Industries, Inc.* (1991), 410 Mass. 15, 570 N.E.2d 1008; *Howard v. APAC-Georgia, Inc.* (1989), 192 Ga. App. 49, 383 S.E.2d 617; *Commonwealth v. Lavelle* (1989), 382 Pa. Super. 356, 555 A.2d 218; *Grant-Howard Associates v. General Housewares Corp.* (1982), 115 Misc. 2d 704, 454 N.Y.S.2d 521, *rev'd on other grounds* (1984), 63 N.Y.2d 291, 472 N.E.2d 1, 482 N.Y.S.2d 225; *Powers v. Baker-Perkins, Inc.* (1979), 92 Mich. App. 645, 285 N.W.2d 402; *Western Resources Life Insurance Co. v. Gerhardt* (Tex. Civ. App. 1977), 553 S.W.2d 783; *McKee v. Harris-Seybold Co.* (1970), 109 N.J. Super. 555, 264 A.2d 98.) A *de facto* merger occurs when the following criteria are present:

> (1) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible;
>
> (2) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller;
>
> (3) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; and
>
> (4) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operation.

See *Kramer*, 204 Ill. App. 3d at 475-76, 562 N.E.2d at 275.

In the present case, the first criterion to establish a *de facto* merger was plainly met. Kolman and Athey entered into the asset purchase agreement on October 1, 1964, and the transaction was consummated on November 13, 1964. On February 22, 1965, less than four months after the asset purchase transaction was completed, Kolman was officially dissolved. Thus, Kolman ceased its or-

dinary business operations and dissolved as soon as legally and practically possible.

The second criterion to establish a *de facto* merger was likewise met. The purchase agreement provided for Athey to acquire the assets of Kolman "subject to all the liabilities of Kolman, except for federal income taxes." Athey does not dispute that it assumed Kolman's liabilities and obligations existing on Kolman's balance sheet as of September 30, 1964, or that Kolman's operations continued uninterrupted after the asset purchase transaction. It is therefore clear that Athey assumed Kolman's liabilities and obligations necessary for the uninterrupted continuation of the normal business operations of Kolman.

The third criterion involves continuity of ownership. Continuity of ownership has been held by other jurisdictions to be the most important factor in determining whether successor corporate liability will be imposed upon a purchasing corporation. (See *Wessinger v. Vetter Corp.* (D. Kan. 1987), 685 F. Supp. 769, 773 (applying Illinois law); *Western Resources Life Insurance Co. v. Gerhardt* (Tex. Civ. App. 1977), 553 S.W.2d 783, 786-87.) Moreover, generally courts will construe an asset purchase transaction to be a *de facto* merger if the acquiring corporation issues shares of stock to the acquired company in exchange for the acquired company's assets. (See *Western Resources Life Insurance Co.*, 553 S.W.2d at 787; but *cf. Powers v. Baker-Perkins, Inc.* (1979), 92 Mich. App. 645, 285 N.W.2d 402 (*de facto* merger established even though no exchange of stock).) In the present case, however, Athey argues that the asset purchase transaction with Kolman was primarily a cash purchase of assets, and that the shares of stock of Athey consisted of only a "secondary and relatively small portion of the consideration received by Kolman for its assets." We disagree.

A dissection of the transaction reveals that the purchase was primarily an exchange of Kolman's assets for defendant's stock and a long-term note directly tied to defendant's financial future. The transaction required defendant to pay Kolman $444,000 in cash at closing on November 13, 1964, an additional $200,000 in cash on February 1, 1965, 40,000 shares of defendant's stock valued at between $10.50 to $12.50 per share, and a nine-year interest-bearing note for $850,000 in exchange for all of Kolman's assets existing on Kolman's balance sheet as of September 30, 1964.

Kolman's balance sheet reveals that Kolman's cash on hand of $465,380 and guaranteed receivables of $320,976 were being transferred from Kolman to Athey as part of the asset purchase transac-

tion. In the event that a portion of the receivables became uncollectible, that amount would be immediately decreased from the amount owed to Kolman. Under the circumstances, Athey paid $644,000 cash to Kolman, and in return Kolman exchanged bank accounts and guaranteed receivables to Athey in the amount of $786,356. After eliminating the cash "swap" between the parties, the reality of the transaction is that Kolman is selling its inventory, land, buildings, machinery and goodwill, and other miscellaneous assets to Athey in exchange for Athey's assumption of Kolman's liabilities then existing on the balance sheet, a long-term note valued at $850,000 and stock valued between $420,000 to $500,000. Athey's stock traded at prices between $11.125 and $12.50 per share during the executory period prior to the closing of the transaction. Athey's 1964 annual report includes a statement by an independent accountant that the market value of Athey's stock subsequent to the issue of the additional 40,000 shares to Kolman was $10.50 per share as of December 31, 1964. Thus, the value of the acquired shares varies depending upon whether the $10.50, $11.125 or $12.50 value per share is used.

Upon a consideration of all the circumstances, we first reject Athey's conclusion that cash rather than stock was the primary consideration for the purchased assets. Instead, we conclude that the transaction was primarily an exchange of Kolman's assets for shares of Athey's stock and a long-term note directly tied to the financial well-being of Athey. Secondly, we also reject Athey's contention that the stock of the acquiring company must be the primary consideration of the transaction to satisfy the third criterion of a *de facto* merger. Athey cites *McKee v. Harris-Seybold Co.* (1970), 109 N.J. Super. 555, 264 A.2d 98, where the court held that there was no continuity of ownership because the 5,500 shares of the purchasing company's stock paid to the seller company constituted only token consideration when the purchase price for the seller company's assets included $2 million in cash. While it is true that stock cannot be added to the transaction as token consideration in order to satisfy the continuity of ownership criterion, this does not mean that all or even most of the purchase price of a transaction must be paid in shares of stock of the purchasing company in order to have a *de facto* merger. Here, based on the transfer of over $400,000 of defendant's stock and an $850,000 long-term corporate note, we conclude that there is sufficient continuity of ownership between Kolman and Athey after the asset purchase transaction to satisfy the third criterion for a *de facto* merger.

The fourth criterion to establish a *de facto* merger is that there must be a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations. In the present case, it is undisputed that Kolman's assets and its business operations remained at their previous location following the asset purchase. Also, after the asset purchase, the same products continued to be manufactured under the Kolman name at the same location with substantially the same work force. Athey argues, however, that because none of the officers of Kolman other than its president, John L. Healy, became associated with Athey, and because Athey's board of directors remained under the same control as it had been prior to the acquisition of Kolman, there is not sufficient continuity of management as required to fulfill the continuity of enterprise criterion. We disagree.

■■ The failure of Kolman's officers, with the exception of its president, to become associated with Athey after the asset purchase agreement is not an unexpected result of any business acquisition. When two separate corporate entities join together as one, there is likely to be a consolidation of management in order to prevent duplication of the same managerial, operational and supervisory functions. Thus, the transaction here must be analyzed and evaluated in its entirety with this business reality in mind. Moreover, *de facto* merger is a judicially created equity principle for the purpose of avoiding injustices. The application of the *de facto* merger principle must therefore be liberally construed in favor of allowing a remedy for a wrongfully caused injury. See *In re Acushnet River & New Bedford Harbor Proceedings* (D. Mass. 1989), 712 F. Supp. 1010; *Bud Antle, Inc. v. Eastern Foods, Inc.* (11th Cir. 1985), 758 F.2d 1451; *Lumbard v. Maglia, Inc.* (S.D.N.Y. 1985), 621 F. Supp. 1529; *Menacho v. Adamson United Co.* (D.N.J. 1976), 420 F. Supp. 128.

In the present case, Kolman's president, John L. Healy, became a member of Athey's board of directors and Kolman's business operations remained substantially unchanged for a long period after the asset purchase transaction. Under these facts and all the salient circumstances that we have mentioned, we conclude that the continuity of enterprise criterion for a *de facto* merger was met.

■■ In addition, in determining whether a *de facto* merger exists in particular cases, courts must widen the scope of their focus from specifics to the broad spectrum of circumstances that are involved, so that parties are not allowed to use sheer transaction machinations to avoid liability for wrongfully caused injuries. Here,

looking at the broad spectrum of the circumstances, it is clear that Athey's acquisition of Kolman's assets constitutes a *de facto* merger notwithstanding any specifics that may indicate otherwise.

Accordingly, we hold that there was a *de facto* merger between Kolman and Athey, and that Athey may be liable for negligence in the design and manufacture of the conveyor manufactured by Kolman. The summary judgment in favor of Athey is therefore reversed and partial summary judgment is entered in favor of Fenderson and against Athey on the issue of the existence of a *de facto* merger between Kolman and Athey. The case is remanded for further proceedings.

Reversed and remanded.

CERDA, P.J., and GREIMAN, J., concur.