COUNTY OF COOK, a body politic and corporate, Plaintiff,

v.

MELLON STUART COMPANY, a Pennsylvania corporation, Federal Street Construction Co., Inc., a Pennsylvania corporation, Baker Engineering, Inc., an Illinois corporation, Michael Baker Corporation, a Pennsylvania corporation, Mellon Stuart Construction, Inc., a Pennsylvania corporation, and Seaboard Surety Company, a New York corporation, Defendants.

No. 92 C 3178.

United States District Court, N.D. Illinois, E.D.

June 15, 1992.

William R. Carney and Francis James Higgins, Bell, Boyd & Lloyd, Chicago, IL, for plaintiff.

Steven G.M. Stein, Timothy R. Conway, Eric Louis Singer and John S. Mrowiec, Stein, Ray & Conway, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On May 11, 1992, plaintiff County of Cook (the "County") filed an action in the Circuit Court of Cook County against Mellon Stuart Company ("Mellon Stuart"), Federal Street Construction Company ("Federal Street"), Baker Engineering, Inc. ("Baker Engineering"), Michael Baker Corporation ("MBC"), Mellon Stuart Construction Inc. ("MSCI") and Seaboard Surety Company ("Seaboard"), alleging breach of contract. On May 14, 1992, defendants removed the action to this court on the basis of diversity of citizenship. Presently before the court is the County's supplemental motion to remand for want of subject matter jurisdiction.[1] For the reasons set forth below, we conclude that this court lacks subject matter jurisdiction over the instant action and, as such, remand the case to the Circuit Court of Cook County.

## I.  Background

In 1974, a class of detainees in the custody of the Cook County Department of Corrections brought an action against the County pursuant to 42 U.S.C. § 1983, charging violations of the Eighth and Fourteenth Amendment of the United States Constitution for failure to provide safe and human conditions of confinement. A comprehensive consent decree was entered on April 9, 1982, providing in part for the renovation and modernization of the County's jail facilities. *Duran v. Elrod*, No. 74–2949 (N.D.Ill.1982) (Shadur, J.), *aff'd*, 713 F.2d 292 (7th Cir.1983), *modified*, 760 F.2d 756 (7th Cir.1985). In order to meet the population restrictions and distribution ceilings for detainees as specified in the consent decree, the County, on August 4, 1989, advertised for bids on the construction of a new jail dormitory facility to be located in the County's Department of Corrections Complex at 2700 South California Boulevard. In September of 1989, defendant Mellon Stuart, an entity incorporated in Pennsylvania, submitted its bid for the project, along with supporting documents indicating its healthy financial status. On or about September 18, 1989, Mellon Stuart was awarded the contract for the construction of the new jail facility.

Under the contract, in consideration for $38,887,000, Mellon Stuart agreed to furnish all labor, materials, equipment, machinery, apparatus, implements, etc. for the work to be performed. Mellon Stuart was to substantially complete the work on the new jail no later than April 30, 1991. The contract defines "substantial completion" as the date when construction is sufficiently complete so as to enable the County to occupy or utilize the facility for the purpose of providing adequate housing for the inmates of the Cook County Department of Corrections. The contract expressly pro-

---

1. In its original motion to remand, the County claimed that defendants' notice of removal was defective on its face. Specifically, the County cited defendants' failure to (1) allege the citizenship of each corporate defendant, and (2) attach an order of the Circuit Court dated May 12, 1992. Rather than respond to the County's motion, defendants filed a motion to supplement or amend the notice of removal. The County does not object to defendants' proposed amendments and supplement, *see* County's Supplemental Motion to Remand ¶ 6, at 3, and it is granted. As the County's facial attack on the notice of removal has been rendered moot, we proceed to consider the substantive question of this court's subject matter jurisdiction.

vided that time was of the essence. Additionally, as required pursuant to the contract, Mellon Stuart submitted a Performance and Payment Bond, *i.e.*, a surety bond, executed by Seaboard, a New York corporation, for valuable consideration. This surety bond constitutes a promise by Seaboard and Mellon Stuart to the County (1) that all terms and conditions of the contract will be fully performed, and (2) that the County would be held harmless from all liabilities, costs, damages and expenses which might accrue against the County in favor of any person not a party to the contract or as a result of negligence by Mellon Stuart or any of its agents.

By March, 1991, substantial defects surfaced in the construction of the new jail. Most noteworthy was extensive delamination, cracking and debonding of concrete topping slabs poured under the direction of Mellon Stuart. These concrete structures were not in conformance with the contract requirements, and ran afoul of the minimum standards of the City of Chicago Building Code. The contract provided that, in the face of defects, Mellon Stuart agreed to perform necessary corrective work, bearing all costs of such work, within five days after written notice of the defect by the County. In order to remedy the defective concrete work, Mellon Stuart proposed a procedure of epoxy injection and joint grinding. Mellon Stuart agreed to bear the costs of testing the epoxy method, and assumed full responsibility for protecting adjoining work already in place. After completing 50% of the epoxy injections, it was discovered that epoxy had seeped into light fixtures, down walls, out of mechanical soffits and ceiling areas, through flashings and down the face of exterior walls of the building. Despite this discovery, Mellon Stuart continued the epoxy injections for approximately four additional weeks, resulting in the blockage of electrical conduits and hydronic heating pipes embedded in the concrete, and the destruction or damage of other completed work, systems, fixtures, equipment, components and property. The County considers Mellon Stuart's failure to remedy the defects, as well as its conduct of the epoxy injections, violations of the contract and its agreement to exercise due care.

Concurrent with the timing of the epoxy debacle, Mellon Stuart had failed to pay its subcontractors and material suppliers as required by the contract, raising serious questions regarding Mellon Stuart's financial stability and its ability to complete the project in a timely manner. According to the County, in September of 1991, Mellon Stuart transferred substantially all of its valuable assets to one or more of the following entities: (1) MBC, an organization incorporated in Pennsylvania; (2) Baker Engineering, an Illinois corporation with its principle place of business in Illinois; or (3) MSCI, an entity incorporated in the state of Pennsylvania. In conjunction with the transfer of assets, Mellon Stuart changed its name to Federal Street, an organization incorporated in Pennsylvania. As alleged by the County, Federal Street operated as a shell company for the Baker defendants, *i.e.*, MBC, Baker Engineering, and MSCI, retaining only a few undesirable construction projects including the new jail. The County further claims that MBC, Baker Engineering, and MSCI are conducting business with Mellon Stuart and Federal Street as a common enterprise. Having acquired substantially all of Mellon Stuart's assets and taken over its business affairs, the County maintains that the Baker defendants are successors in interest to Mellon Stuart and, therefore, are liable for its obligations and contingent losses.

By December, 1991, Mellon Stuart, calling itself Federal Street, was unable to meet its financial obligations to its subcontractors working on the new jail. By letters dated December 27, 1991, pursuant to section GC–17 of the contract, the County officially notified Mellon Stuart and Seaboard that Mellon Stuart was in default in the performance of its obligations under the contract. Under the terms of the contract, Mellon Stuart was afforded ten days in which to cure the defaults, but failed to do so. Once again, on April 11, 1992—four days prior to the anticipated date of completion, as revised—the County informed Mellon Stuart and Seaboard of Mellon

Stuart's further defaults under the contract. The County reiterated its demands in a meeting with representatives of Mellon Stuart and Seaboard, on May 7, 1992. At this meeting, Seaboard notified the County that it did not accept the County's conclusion regarding the defaults of Mellon Stuart, and therefore refused to complete the work itself in accordance with its obligation under the surety bond and contract. Seaboard's position was restated in a letter dated May 8, 1992, prompting the instant lawsuit.

## II. Jurisdiction

■ The County seeks remand to the Circuit Court of Cook County, arguing that complete diversity, *see Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) (requiring that no plaintiff share common citizenship with any defendant for diversity jurisdiction to exist under federal law), is not present in this case. Specifically, the County points to the citizenship of (1) Baker Engineering, undisputedly a citizen of Illinois, and (2) Mellon Stuart, n/k/a Federal Street, allegedly having its principal place of business in Illinois. Defendants concede that Baker Engineering is an Illinois corporation, but maintains that it was fraudulently joined as a defendant in this action. Further, defendants claim that Mellon Stuart, n/k/a Federal Street, sustains its principal place of business in Pennsylvania, the state of its incorporation. Because this court cannot conclude that Baker Engineering was fraudulently joined in this cause, we need not consider whether Mellon Stuart, n/k/a Federal Street, maintains its principal place of business in Illinois.

■ The right of removal under 28 U.S.C. § 1441 "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921). The Seventh Circuit in *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir.1992), addressed for the first time the contours of the fraudulent joinder doctrine. The *Poulos* court defined "fraudulent joinder" in terms of (1) false allega-

tions of jurisdictional fact, or, as in most cases, (2) a claim against an in-state defendant "that simply has no chance of success, whatever the plaintiff's motives." *Id.* at 73 (citations omitted). There can be no dispute that this action does not involve false allegations of jurisdictional fact and, as such, our present focus is on whether the County has stated a viable claim against Baker Engineering. The burden of establishing fraudulent joinder is a heavy one, resting with the out-of-state defendant seeking to remove the cause to federal court. *Id.* Defendants must show that, "after resolving all issues of fact *and law* in favor of the [County], the [County] cannot establish a cause of action against [Baker Engineering,] the in-state defendant." *Id.* (emphasis in original) (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981)). As noted by the Seventh Circuit, "the federal court must engage in an act of prediction: is there any *reasonable possibility* that a state court would rule against the non-diverse defendant?" *Id.* In the event that this court answers the above question in the affirmative, defendants have failed to carry their burden and the cause must be remanded to the Circuit Court of Cook County.

■ Under Illinois law, a corporation that purchases the assets of another corporation is generally not liable for the debts and liabilities of the transferor. *Fenderson v. Athey Products Corp.*, 220 Ill. App.3d 832, 834, 163 Ill.Dec. 337, 339, 581 N.E.2d 288, 290 (1st Dist.1991); *Kramer v. Weedhopper of Utah, Inc.*, 204 Ill.App.3d 469, 475, 149 Ill.Dec. 807, 810, 562 N.E.2d 271, 274 (1st Dist.1990). The Illinois courts, however, have recognized several exceptions that serve to impute liability to the purchasing company, including:

(1) Where there is an express or implied agreement of assumption;

(2) Where the transaction amounts to a consolidation or merger, including a *de facto* merger, of the purchaser and seller corporations;

(3) Where the purchaser is merely a continuation of the seller; or

(4) Where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations.

*Fenderson*, 220 Ill.App.3d at 834, 163 Ill. Dec. at 339, 581 N.E.2d at 290; *Kramer*, 204 Ill.App.3d at 475, 149 Ill.Dec. at 810, 562 N.E.2d at 274.

■ In the instant case, the County contends that the September 1991 transfer of Mellon Stuart assets to MBC constitutes a *de facto* merger. Further, the County argues that Baker Engineering, operating as part of a common enterprise to deliver combined services, can be held liable for the obligations of Mellon Stuart. Under Illinois law, a *de facto* merger occurs in the following circumstances:

(1) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible;

(2) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller;

(3) There is a continuation of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; and

(4) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operation.

*Fenderson*, 220 Ill.App.3d at 835, 163 Ill. Dec. at 339, 581 N.E.2d at 290; *Kramer*, 204 Ill.App.3d at 475–76, 149 Ill.Dec. at 811, 562 N.E.2d at 275. To support its position, the County, in its verified complaint and exhibits appended to its current motion, assert the following: MBC acquired substantially all of Mellon Stuart's valuable assets and on-going projects in consideration for a promise to make payments totaling $4 million, the first payment being due on March 1, 1993. Defendant MBC created MSCI to receive the Mellon Stuart assets and to conduct its ongoing projects, absorbing Mellon Stuart's employees. With the addition of MSCI, MBC embodies three functional work groups (*i.e.*, engineering, operation and maintenance, and construction), organized to provide one integrated product. Baker Engineering is a division of MBC's engineering group, and is closely related to MSCI. Baker Engineering shares directors, officers and common management with both MBC and MSCI. Defendant Federal Street was created by MBC in order to liquidate Mellon Stuart's losing projects. Indeed, Federal Street, purportedly a shell company for the affiliated Baker defendants, was burdened with such enormous liabilities that it was forced to seek protection under Chapter 11 of the Bankruptcy Code. MSCI, through its President, who is also the Executive Vice President of MBC, and other officers and employees, directed and continued the operations of Federal Street throughout the time when serious damage was caused to the County's new jail. Baker Engineering worked out of the same address, 118 South Clinton Street in Chicago, Illinois, as did Federal Street and MSCI. Further, Baker Engineering pursued design business with Mellon Stuart, a/k/a Federal Street, on public sector projects in Chicago during the time when Federal Street was controlled and directed by MBC.

■ In order to rebut the County's allegations regarding Baker Engineering's role in the alleged common enterprise, defendants rely on the affidavit of Harry R. Hanley, President of Baker Engineering. In this affidavit, Hanley states "Baker Engineering, Inc. does not now, nor has it ever controlled or directed the operations of Mellon Stuart Company/Federal Street Construction Company." Hanley also denied that it ever shared or maintained common offices with Mellon Stuart or Federal Street. The assertions of the Hanley affidavit, however, at best create a factual dispute regarding the interrelationship of the Baker defendants.[2] Resolving all ques-

2. The County has moved to strike the Hanley affidavit along with affidavits filed by Donald P.

tions of law and fact in favor of the County, we find a reasonable possibility that an Illinois court would conclude that the transfer of assets from Mellon Stuart to MBC constitutes a *de facto* merger and, as such, Baker Engineering, acting as an integral part of a common enterprise with MBC and MSCI, would be liable for Mellon Stuart's purportedly deficient work on the new jail. Moreover, these same allegations support the County's assertion that the creation of Federal Street by MBC, acting in a common enterprise with Baker Engineering, was for the fraudulent purpose of escaping liability for Mellon Stuart's obligations. Accordingly, we cannot conclude that Baker Engineering was fraudulently joined as a defendant in this cause, and the County's supplemental motion for remand is granted.[3]

### III. Conclusion

For the reasons set forth above, this cause, having been removed improvidently and without jurisdiction, is remanded to the Circuit Court of Cook County. It is so ordered.

Fusilli, William G. Thomas and Robert A. Wheeler. Contrary to the County's argument, they appear to be made on personal knowledge and contain more than mere conclusory statements of law. While they alone do not foreclose the possibility of an Illinois court ruling against Baker Engineering, they are not so deficient to warrant being stricken. Accordingly, the County's motion to strike is denied.

3. Defendant Seaboard argues that the automatic stay stemming from Federal Street's Pennsylvania bankruptcy proceeding operates to preclude this court from remanding this case. We dis-

agree. As poignantly noted by the County, the present inquiry respects this court's subject matter jurisdiction: diversity jurisdiction must exist both when the suit was filed and when it was removed. As of those dates, May 11 and 14, 1992, Federal Street's bankruptcy petition had not been filed. The subsequent bankruptcy filing and resulting stay under section 362 of the Bankruptcy Code, 11 U.S.C. § 362, do not prevent this court from remanding an improperly removed action. *See Baxter HealthCare Corp. v. Hemex Liquidation Trust,* 132 B.R. 863, 867 (N.D.Ill.1991).