YOHMA GRAY, Plaintiff-Appellant, v. LOYOLA UNIVERSITY OF CHICAGO *et al.*, Defendants-Appellees.—ELVIRA FERNANDEZ HASTY, Plaintiff-Appellant, v. LOYOLA UNIVERSITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)   Nos. 1—93—3803, 1—93—3804 cons.

Opinion filed June 30, 1995.—Rehearing denied August 2, 1995.

Martin J. Oberman, and Thomas E. Johnson and Leslie Ann Jones, both of Johnson, Jones & Snelling, both of Chicago, for appellants.

Ellen M. Babbitt, of Butler, Rubin, Saltarelli & Boyd, and Jill M. Rappis, of Loyola University, both of Chicago, for appellees.

JUSTICE CAHILL delivered the opinion of the court:

We review a grant of summary judgment where the trial court found that the coming together of Loyola University and Mundelein College in 1991 extinguished the tenure of the Mundelein faculty. We reverse.

Plaintiffs were tenured faculty members at Mundelein College (the College). Yohma Gray, an English professor, was hired in 1964 and granted tenure in 1969. Elvira Hasty, a chemistry professor, was hired in 1978 and granted tenure in 1982. Each year, the Mundelein tenured faculty signed contracts and salary agreements entitled "CONTRACT FOR TENURED FACULTY." The contracts incorporated the faculty manual, which defined tenure:

"APPOINTMENTS WITH CONTINUOUS TENURE
Tenure refers to a commitment of the College to offer continued employment subject to satisfactory conduct and effective teaching and, upon making application and upon recommendation, is the status granted to faculty members after the probationary period, protecting them from dismissal except for reasons and according to procedure stated by the [American Association of University Professors].

\* \* \*

Renewed appointment and tenure status are confirmed in writing. When faculty members acquire tenure, this fact will be so stated in the contract for the ensuing year and thereafter in each year's contract."

Tenured faculty could be terminated, under the manual, because the College faced financial difficulty—labeled in the manual as a state of financial exigency—, discontinued a program or department, or for health or cause. Before tenured faculty could be terminated because the College was in a state of financial exigency, that state had to be formally declared by the board of directors.

Mundelein found itself in severe financial difficulty in 1989 and 1990. Members of the Mundelein board met with representatives of Loyola in January 1991 to discuss a possible solution. Mundelein and Loyola signed a "Memorandum of Agreement" on April 15, 1991. They agreed:

"Loyola will establish the Mundelein College of Loyola University which will be governed and administered as a separate college of the university. *It is Loyola's intention to continue the new Mundelein College in existence on a permanent basis.*" (Emphasis added.)

The agreement was to take effect in June 1991.

On April 29, 1991, Mundelein sent to all tenured faculty a document entitled "1991-92 CONDITIONAL AND TERMINAL CONTRACT FOR TENURED FACULTY." This document stated that it was conditioned on Mundelein remaining independent and that if Mundelein College became part of Loyola University, the document would not take effect. The document said nothing about the fate of the tenured faculty if Mundelein became part of Loyola.

On June 14, 1991, Mundelein and Loyola signed the formal agreement. The record shows that the board of Mundelein never declared a state of financial exigency. Loyola acquired all of Mundelein's assets and assumed four designated financial obligations under the agreement. Loyola agreed to continue Mundelein's educational mission and to accept its students. Paragraph nine of the agreement contains the following indemnification language:

> "Loyola agrees to indemnify and hold harmless Mundelein, its Board of Trustees and Officers from and against any liability, loss, cost, damage, claim or expense which may arise out of the transactions contemplated by this Agreement or the operations of Mundelein subsequent to the Implementation Date ***."

The agreement went on to address the status of the members of the Mundelein tenured faculty:

> "a. *Tenured Faculty.* Mundelein represents that as of the Implementation Date it will have in its employment 40 tenured faculty. Loyola agrees that prior to the Implementation Date it will offer to:
>
>> i. At least 26 members of the currently tenured faculty of Mundelein, tenured appointments at their current academic rank and at a salary which is no less than their current Mundelein salary ***.
>>
>> ii. At least 11 members of the currently tenured faculty of Mundelein a five-year appointment at their current academic rank and at a salary which is not less than their current Mundelein salary ***.
>>
>> iii. Up to three members of the currently tenured faculty of Mundelein, a payment in an amount equal to two years of their current salary in lieu of further employment."

The agreement does not name the 26 teachers who were to be granted tenure, the 11 to be offered five-year contracts, or the 3 to be dismissed with two years' salary. Plaintiffs are two of three tenured faculty members in the third category. They were dismissed and offered two years' salary. They refused this offer and filed a four-count complaint against Loyola and Mundelein which is the subject of this appeal.

Count I alleges that the agreement between Mundelein and Loyola was a *de facto* merger, making Loyola responsible for Mundelein's contract obligations. Count II is not an issue in this appeal. Count III alleges that Mundelein breached the tenure contracts embodied in the faculty manual. Count IV alleges that "the transfer of all of Mundelein's assets to Loyola for inadequate consideration and the refusal of Loyola to fulfill Mundelein's obligations and liabilities to plaintiff as a tenured professor have operated as a fraud on plaintiff."

The trial court granted Mundelein summary judgment on count III. It ruled:

> "The plaintiffs' last effective employment contract expired by its own terms on June 9, 1991. Subsequent to that date there was no contract with Mundelein which Mundelein could be charged with breaching. Subsequent to June 14, 1991, there is no independent Mundelein College within which the plaintiffs' prior tenure status could be recognized.
>
>        * * *
>
> Nothing in the plaintiffs' one year employment contract, nor in the faculty manual which protects their tenure with Mundelein gives rise to rights and entitlement after Mundelein ceases to exist as an independent college.
>
> In the simplest terms, the employment contract for each plaintiff ended by its own terms and thus terminated all employment rights. The school affiliated with another and thereby terminated faculty tenure."

The court also ruled, as a matter of law, that the "faculty manual regarding the process to terminate a teacher in the event of financial exigency is not applicable in cases where the college['s] independent status is ended by affiliation."

The court then granted summary judgment for Mundelein and Loyola on counts I and IV, ruling that the disposition of count III made it unnecessary to address them. The court certified this appeal under Supreme Court Rule 304 (134 Ill. 2d R. 304).

Plaintiffs first argue that the trial court erred when it found as a matter of law that the financial distress of Mundelein leading to the affiliation with Loyola extinguished Mundelein's obligations under the faculty manual.

Summary judgment is proper when the pleadings, depositions, admissions on file, and any affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992).) All doubts must be resolved against the movant, and if there is a question as to the propriety of granting the motion for summary judgment, the court should opt for a trial. *Wegener v. Anna* (1973), 11 Ill. App. 3d 316, 296 N.E.2d 589.

We first reject the trial court's conclusion that plaintiffs' tenure rights "expired" on June 9, 1991, because their yearly contracts were not renewed. The conclusion overlooks the language in the faculty manual that the yearly contracts were "confirmations" of the tenure rights contained in the faculty manual. The faculty manual was an essential part of the contract governing the relationship between

Mundelein and its tenured faculty. Failure to offer a tenured faculty member the yearly contract could not terminate tenure unless the tenure policy of the college set out in the faculty manual is interpreted as discretionary. Defendants did not make this argument. On the contrary, Mr. Sullivan, chairman of the Mundelein board, when asked at his deposition whether he believed that the tenure of the Mundelein professors was terminated when they were not sent a renewal contract in June 1991, answered "No." Tenure rights are contractual in nature, and a faculty manual setting out the terms and conditions of tenure is a contract. *Williams v. Northwestern University* (1986), 147 Ill. App. 3d 374, 497 N.E.2d 1226.

Defendants allege that the trial court found three undisputed facts in support of its conclusion that the tenure obligations of Mundelein were extinguished when it ceased to operate as an independent college: (1) Mundelein was in a state of severe financial crisis; (2) Mundelein affiliated with Loyola as a direct result of the financial crisis; and (3) Mundelein "ceased ordinary business operations" as a result of the affiliation. Two of these facts are not in dispute. Whether Mundelein "ceased ordinary business operations" after the affiliation is in dispute.

The conclusion the trial court drew from these facts does not address the argument made by the plaintiffs. Plaintiffs argue that the tenure rights of the faculty are governed by the faculty manual. The parties agree that the manual controls the tenure obligations of Mundelein and the rights granted to the tenured faculty. The manual sets out a procedure for the ultimate limitation or termination of tenure if the board of directors of Mundelein declares a state of financial exigency. The board never made such a declaration. As the manual is silent on the impact a severe financial crisis, an affiliation, and ceasing "ordinary business operations" have on the tenure obligations of the College, it was error to conclude that those contingencies extinguished tenure.

The defendants take the position, and the trial court agreed, that the decision to affiliate with Loyola was born of financial exigency, whether formally declared by the board or not. Once a state of financial exigency occurred, even though not formally declared, and it had been established that that exigency prompted the affiliation, it was, in the defendants' viewpoint, proper for the trial court to find that when Mundelein ceased to exist as an independent college its obligations under the faculty manual were extinguished.

An implicit term in a tenure contract is that it is only enforceable while the college exists. The trial court ruled that Mundelein ceased to exist "as an independent college," and so all of its contracts

were terminated. We have found no law to support the proposition that an independent college ceases to exist and its contractual obligations are extinguished when it becomes part of a university. Though no longer independent, considerable support exists in the record for the argument that Mundelein "exists." The agreement with Loyola says as much. Chairman Sullivan admitted that Mundelein was a "going concern" on the date the agreement with Loyola took effect. The defendants admit that the impetus for the agreement with Loyola was the preservation, not the extinction, of the College. Defendants admit, at the very least, that Mundelein remained in existence after the affiliation to grant degrees to current Mundelein students who wished to graduate from Loyola with a Mundelein diploma. The agreement provided: "Loyola agrees that the students currently enrolled at Mundelein, upon meeting the requirements toward their degree, may choose to receive either a Mundelein degree or a Loyola degree ***."

Defendants also argue that an adoption of the plaintiffs' theory would force Loyola to specifically perform a contract for personal services in the future. A review of the cases cited by defendants, both State and Federal, supports the proposition that future employment obligations, like any personal service contracts, are not amenable to specific performance. (See *Zannis v. Lake Shore Radiologists, Ltd.* (1979), 73 Ill. App. 3d 901, 392 N.E.2d 126.) But plaintiffs' complaint does not ask for specific performance. They petitioned in count III for a declaratory judgment that Mundelein breached its contract when it failed to follow the steps in the faculty manual for a declaration of financial exigency and termination of tenure. They earlier alleged in count I that Loyola assumed Mundelein's contracts when Loyola affiliated with Mundelein. Though specific performance may not be available, it does not follow that Loyola would not be liable for money damages if Loyola assumed those obligations and failed to meet them.

Defendants also argue that a contract for tenure is school specific and the right of tenure cannot be transferred to another school. The defendants cite to the American Association of University Professors' guidelines in support. AAUP materials caution against portable or transferrable tenure:

> "If an institution with strongly research-oriented science departments acquires a failing institution whose particular strengths lie in the arts, the acquiring institution must assume the acquired institution's full complement of tenured teachers in the sciences, even though no expansion in its science offerings is contemplated. Because we do not admit of redundancy as a ground to terminate tenure in the absence of financial exigency, the practical effect of

this policy would be to cause the acquiring institution to terminate its most promising junior scientists in order to make room for those whom neither that department nor the institution had ever considered for tenure. This 'bumping' effect would be felt throughout the acquiring institution in nonexpansion areas." AAUP, "On Institutional Problems Resulting from Financial Exigency" (1978), 1990 *Policy Documents & Reports* (1990 ed.).

The AAUP materials and the arguments advanced by the defendants make clear that academic tenure raises difficult issues when colleges affiliate. The affiliation, merger, or *de facto* merger of one college with another is seen as an event incompatible with survival of the unique relationship the absorbed college maintained with its faculty. The problem with defendants' argument is that it is raised on a motion for summary judgment. The Mundelein faculty manual is silent on the impact of "affiliation." Whether the parties intended that tenure be extinguished if Mundelein affiliated with another school is not a question of law, but one of fact.

We note that the Mundelein faculty manual tracks the recommendations of the AAUP for reviewing tenure when a school is in financial difficulty. But again, the Mundelein faculty manual specifically requires the board of directors to formally declare a state of financial exigency as an initial step before cutbacks in tenure can take place.

We next must reject defendants' argument, addressed to count I, that the affiliation with Loyola cannot be a merger because they did not file a report with the Secretary of State under the Merger of Not For Profit Corporations Act (Act) (805 ILCS 120/0.01 *et seq.* (West 1992)).

Generally, the debts, liabilities, and duties of two corporations that merge are assumed by the surviving corporation. The Act so provides. (805 ILCS 120/7 (West 1992).) Under the Act, religious corporations are not required to record mergers with the Secretary of State, but rather with the county recorder. (805 ILCS 120/2(5) (West 1992).) Defendants' avoidance of the word "merger" and their use of "affiliation" cannot make of a merger something legally different unless "affiliation" has a legal meaning different from merger. Defendants have not directed us to one, nor are we able to find one.

Plaintiffs term the affiliation a *de facto* merger and argue that Loyola is therefore required to honor their employment contracts. The *de facto* merger doctrine applies where statutory merger formalities are not followed, but where, for reasons of equity, the acquiring corporation is treated as if they had been followed. The doctrine applies where the seller ceases operation, the buyer assumes the seller's

liabilities and obligations, and there is a continuity of shareholders and management. (*Fenderson v. Athey Products Corp.* (1990), 220 Ill. App. 3d 832, 835, 581 N.E.2d 288.) If the transaction is found to be a *de facto* merger, then the surviving corporation, under Illinois law, is required to honor and comply with the contracts and obligations of the merged corporation. See *Fenderson*, 220 Ill. App. 3d 832, 581 N.E.2d 288.

We have read the Mundelein faculty manual. As we have said, we find no language that addresses the fate of the faculty in the case of an affiliation, merger, or *de facto* merger. The trial court erred in finding, as a matter of law, that rights granted under the manual to tenured faculty were extinguished by the affiliation with Loyola because Mundelein ceased to exist as an independent institution. Whether or not Mundelein was required, under the manual to safeguard the tenure rights of its faculty in an affiliation is a question of fact to be resolved by discerning the intent of the parties in light of their agreement.

The trial court was correct in its ruling that counts I and IV directed against Loyola depend on the outcome of the breach of contract action directed against Mundelein. So the trial court found no need to address this issue because of its ruling on count III. Since we have found an issue of fact in count III, the court must, on remand, turn its attention to counts I and IV if Mundelein is found to have breached its contract. We reverse the grant of summary judgment for Mundelein on count III and the dismissal of counts I and IV directed against Loyola. We remand for proceedings consistent with this opinion.

Reversed and remanded.

HOFFMAN, P.J., and S. O'BRIEN, J., concur.