THIRD DIVISION

June 17, 1998

Nos. 1-97-0605, 1-97-0622, Consolidated

YOHMA GRAY and ELVIRA FERNANDEZ HASTY, 

Plaintiffs-Appellees,

v.

MUNDELEIN COLLEGE,

Defendant-Appellant,

    and

LOYOLA UNIVERSITY OF CHICAGO, 

Defendant.

________________________________________

JUDITH R. MYERS, YOHMA GRAY and ELVIRA FERNANDEZ HASTY,

Plaintiffs-Appellants,

v.

LOYOLA UNIVERSITY OF CHICAGO and

MUNDELEIN COLLEGE,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Nos. 90 CH 12300, 91 CH 12540

Consolidated below with No. 96 CH 1100

Honorable

Michael Getty,

Judge Presiding.

MODIFIED ON DENIAL OF REHEARING

JUSTICE CAHILL delivered the opinion of the court:

We revisit plaintiffs' breach of contract suit against defendants Mundelein College and Loyola University.  In an earlier appeal, we reversed summary judgment for defendants, holding that an issue of fact remained about whether the coming together of Loyola and Mundelein extinguished Mundelein's tenure obligations to plaintiffs.  After a trial on remand, the trial court entered judgment for plaintiffs Yohma Gray and Elvira Fernandez Hasty against Mundelein only, including prejudgment interest.  Judgment was entered against plaintiff Judith Myers.  The trial court also granted summary judgment to Loyola on plaintiffs' successor liability claims.  We now affirm the trial court's judgment in favor of plaintiffs Gray and Hasty against Mundelein and summary judgment for Loyola.  We reverse the judgment against plaintiff Myers and the award of prejudgment interest to plaintiffs.  

Defendants Loyola and Mundelein argue on appeal that: (1) the trial court exceeded the mandate of 
Gray v. Loyola University of Chicago
, 274 Ill. App. 3d 259, 652 N.E.2d 1306 (1995) (
Gray I
); (2) the trial court's interpretation of Mundelein's faculty manual "contradicts all evidence of intent presented at trial"; (3) plaintiffs did not prove that Mundelein's breach caused damages beyond two years' salary; (4) the trial court erroneously retained jurisdiction to award future damages; and (5) the trial court erred in awarding prejudgment interest.  

Plaintiffs cross-appeal.  They argue that the trial court erred by finding Loyola, as a successor corporation, is not liable for Mundelein's breach.  Plaintiff Myers argues that the trial court erred in finding that she waived her right to sue for loss of her tenure at Mundelein by accepting a five-year teaching contract with Loyola.

 
 Plaintiffs were tenured professors at Mundelein College until 1992.  Under Mundelein's faculty manual, tenured positions could be terminated for the following reasons: (1) financial exigency; (2) the discontinuance of a program or department; (3) health; or (4) cause.  The manual also explained how "financial exigency" was to be established:

"If, after consultation with the administration, faculty, and other bodies, the [board of trustees] determines that the financial viability of the institution is endangered and that a state of exigency exists, the Board shall so declare a state of financial exigency."

In 1989 and 1990, Mundelein was faced with serious financial problems.  But the board of trustees never declared a state of financial exigency.  In the summer of 1989, Mundelein borrowed $4 million from Continental Bank.  The Catholic Order of the Sisters of Charity of the Blessed Virgin Mary (the BVM Order) agreed to guarantee the loan.  In exchange, Mundelein gave the BVM Order a security interest in some of its property.  Mundelein also agreed not to obtain other loans without approval of the BVM Order and not to borrow from Mundelein's endowment fund.  Should Mundelein violate the agreement, Mundelein's board of trustees would have 90 days to either "cure the breach" or vote to close the college within 18 months.

In October and November 1990, Mundelein borrowed from its endowment fund to pay bills.  The BVM Order demanded that Mundelein's board of trustees "cure the breach" or vote to close the school.

To prevent closing, Mundelein negotiated with Loyola.  On April 15, 1991, Mundelein and Loyola agreed to an "affiliation."  Under their agreement, Loyola acquired Mundelein's assets and assumed certain Mundelein financial obligations.  Mundelein was to remain in existence as a separate college governed and administered by Loyola.  Loyola agreed to continue Mundelein's educational mission and to accept its students.  Loyola agreed to offer 26 of Mundelein's tenured faculty tenured positions at Loyola; to offer 11 tenured faculty a five-year appointment; and to offer three tenured faculty payments equal to two years' salary in lieu of employment.  The agreement was finalized on June 14, 1991.

On April 29, 1991, Mundelein sent to all tenured faculty a document entitled "1991-92 CONDITIONAL AND TERMINAL CONTRACT FOR TENURED FACULTY."  This document stated that it was conditioned on Mundelein remaining independent and that if Mundelein College became part of Loyola, the document would not take effect.  

When Mundelein joined Loyola, the three plaintiffs in this suit were not offered tenured faculty positions at Loyola.  Loyola offered Myers a five-year nontenured position.  She accepted.  Loyola offered Gray and Hasty two years' salary, which they rejected.

In the first appeal of this case, we reversed the trial court's finding that plaintiffs' tenure rights were extinguished when Mundelein affiliated with another school and ceased to exist as an independent college. We found "no law to support the proposition that an independent college ceases to exist and its contractual obligations are extinguished when it becomes part of a university."  
Gray I
, 274 Ill. App. 3d at 264.  We held that the question of whether the tenure rights of Mundelein faculty survived the "coming together" of Mundelein and Loyola could not be resolved as a matter of law because the faculty manual did not address "the fate of the faculty in the case of an affiliation, merger, or 
de
 
facto
 merger."  
Gray I
, 274 Ill. App. 3d at 266.  The silence of the manual on the issue of tenure after affiliation created a question of fact as to the intent of the parties.

On remand, the trial court heard testimony about the parties' intent regarding Mundelein's tenure obligations in the event of affiliation.  Plaintiffs testified that, although the effect of an affiliation on tenure was never discussed, they expected Mundelein to "safeguard" their tenure rights.  

Mundelein presented two witnesses who testified about the custom of educational institutions with respect to tenure after affiliation.  Peter Ruger, an attorney with 20 years' experience representing educational institutions, testified that the American Association of University Professors (the AAUP) publishes a "Red Book" that contains "views of faculty on a variety of issues that affect faculty."  Ruger testified that the "Red Book" is "used by the higher education community to determine the meaning of tenure."  According to Ruger, under the "prevailing view of the academic community" and the "Red Book," an affiliating college is not obliged to preserve tenure for all tenured faculty.  Ruger testified that under AAUP guidelines a declaration of a financial exigency is not required before a college terminates tenure as a consequence of affiliation.

Lawrence White, who served as counsel for the AAUP and as in-house counsel for several schools, described the AAUP as an organization of university professors that "formulate[s] and disseminate[s] policies [about] the rights and duties of faculty members across the country."  White testified that according to the custom of educational institutions and AAUP standards, an institution that acquires another in an affiliation is not required to hire all the tenured faculty.  Nor must the acquired institution insist that all its tenured faculty be hired.  Both Ruger and White suggested that such requirements would hamper negotiations and discourage affiliation.  

The trial court ruled that the Mundelein faculty manual set out the reasons and procedures for tenure termination and made no provisions for termination when an affiliation occurs.  Although financial exigency was a valid reason to terminate tenure, no financial exigency had been declared by Mundelein's board of trustees as required under the manual.  The trial court further ruled that even if Mundelein had declared a financial exigency, a 
bona
 
fide
 exigency did not exist.  The court acknowledged Mundelein's "cash flow" problems, but noted that Mundelein still had valuable assets.  The court also found that Mundelein's board of trustees "triggered a breach" of the agreement with the BVM Order, thereby causing the financial crisis on which Mundelein relied to "justify" affiliation.

The trial court did not find useful the testimony regarding the common practices of affiliating institutions or the AAUP guidelines.  The court reasoned that "the parties never agreed that the AAUP [guidelines] would abrogate tenure rights upon an affiliation."  Even if the AAUP guidelines controlled, the AAUP guidelines required a 
bona
 
fide
 financial exigency, faculty involvement, and due process to end tenure in the event of affiliation.  

The trial court ruled in favor of plaintiffs Gray and Hasty on their breach of contract claims and awarded damages in the amounts of $262,371 and $205,349.  The trial court ruled against plaintiff Myers, holding that she had waived her claim by accepting a five- year nontenured teaching position at Loyola.  

Plaintiffs moved for a recalculation of damages.  The trial court then recalculated damages through December 31, 1996, and ruled that Gray and Hasty were entitled to prejudgment interest.  The trial court also said that plaintiffs may bring future actions for damages obtained after trial.  The trial court granted summary judgment for Loyola on plaintiffs' successor liability claim, holding that plaintiffs had not established a 
de
 
facto
 merger.

Mundelein first argues that the trial court exceeded the mandate of 
Gray I
 on remand by finding, after trial, that there was no 
bona
 
fide
 financial exigency.  Mundelein refers to the trial court's comments:

"[I]t is clear that the Board of Trustees never declared a financial exigency ***.

Even if *** Mundelein had declared a financial exigency this [c]ourt could not conclude, based on the evidence before the [c]ourt, that a 
bona
 
fide
 financial exigency actually existed.

The evidence clearly indicates that Loyola valued Mundelein at $65.7 million. *** 

***

Mundelein had cash flow problems but, based upon the valuation of $65.7 million at a cost [to Loyola] of only $12.8 million, there is no support for the conclusion that a financial exigency existed.

***

The Mundelein Board of Trustees *** intentionally triggered a breach of the loan guarantee covenant knowing it would result in a call for a $4 million loan.  ***  The 'breach' precipitated the 'crisis' which 'justified' the action *** [of] entering into negotiations with Loyola *** regarding 'affiliation.'"

Mundelein relies on 
Ptaszek v. Konczal
, 10 Ill. 2d 326, 140 N.E.2d 725 (1957).  In 
Ptaszek
, our supreme court had earlier reversed the trial court's ruling and remanded, noting that one issue, a trustee's duty to account, was "not at issue."  
Ptaszek
, 10 Ill. 2d at 327.  On remand, the trial court rendered findings on that issue and ordered an accounting.  Our supreme court reversed  because the "trial court did not follow our opinion and mandate."  
Ptaszek
, 10 Ill. 2d at 327.

Mundelein points out that in 
Gray I
, we held that Mundelein's "state of severe financial crisis" and that the affiliation was "a direct result of the financial crisis" were undisputed facts.  
Gray I
, 274 Ill. App. 3d at 263.  Mundelein argues that, like the trial court in 
Ptaszek
, the trial court here exceeded its mandate by making a ruling that contradicted our findings of "undisputed fact."

We acknowledge that the trial court's findings deviate from our finding in 
Gray I
 that the uncontradicted evidence established affiliation was driven by a legitimate financial crisis.  But the trial court's comments are superfluous in context.  In 
Gray I
, the evidence established, and we held, that financial exigency had to be formally declared to extinguish plaintiffs' tenure rights.  That was never done.  The trial court's findings that there was no genuine financial crisis were unnecessary
 to a resolution of the case and do not require reversal.

Mundelein next argues that the trial court erred in finding that the parties did not intend affiliation to release Mundelein from tenure obligations to plaintiffs.  The interpretation of a contract is a question of law to be reviewed 
de
 
novo
 on appeal.  
Regnery v. Meyers
, 287 Ill. App. 3d 354, 360, 679 N.E.2d 74 (1997).  But Mundelein suggests that something outside the manual, for which it offered extrinsic evidence at trial, governs here.  Where extrinsic evidence is needed to establish the intent of the parties, that intent is a question of fact and will not be disturbed on review unless it is contrary to the manifest weight of the evidence.  See 
Howard A. Koop & Associates v. KPK Corp.
, 119 Ill. App. 3d 391, 398, 457 N.E.2d 66 (1983).

Mundelein emphasizes the trial court's finding that "[n]either the faculty of Mundelein *** nor Mundelein itself ever considered what would happen if there were an affiliation or merger."  Mundelein maintains that this finding "eliminated any possibility that Mundelein *** contractually 'intended' to assume obligations in the event of an affiliation."  Mundelein argues that the court inverted the burden of proof and required Mundelein to "disprove the existence and breach of a 'phantom' contract term."   Mundelein contends that plaintiffs must prove the existence of a contract term obligating Mundelein to safeguard plaintiffs' contractual rights in the event of affiliation.  But plaintiffs' argument is based on unambiguous contract terms--that Mundelein can terminate tenure for no reason other than those listed in the manual.  And if affiliation is driven by a financial exigency, tenured faculty are entitled to participation in the determination and to a board declaration that a financial exigency existed.  
Gray 
I
 left open the possibility that Mundelein could show on remand the existence of an agreement, other than the faculty manual, that controlled the parties' tenure obligations in an affiliation.  But where a party suggests that an agreement outside the underlying contract controls, the party relying on it bears the burden of proof.  
Cf.
 
Ashe v. Sunshine Broadcasting Corp.
, 90 Ill. App. 3d 97, 100, 412 N.E.2d 1142 (1980).

   Mundelein further argues that the manual term requiring a declaration of financial exigency applies only where tenure is terminated for one of the reasons specified in the manual.  Mundelein suggests that "financial crisis affiliation," although not among the reasons listed in the manual, is another way that termination of tenure may be achieved, and that declaration of financial exigency is not required before such an affiliation.  Mundelein suggests that in 
Gray I
 we already determined that tenure could be terminated for a reason not listed in the manual.  Mundelein argues that if "this court had already decided that the [m]anual procedures applied, there would have been no need for a remand."  We agree with the Mundelein analysis, but not with the conclusion.

In 
Gray I
 we acknowledged that the faculty manual outlines reasons for and procedures by which Mundelein could terminate tenured faculty.  
Gray I
, 274 Ill. App. 3d at 260.  We did not hold that the faculty manual lacked terms on which plaintiffs could base their breach of contract claim.  We addressed only the bases of the trial court's first judgment: that the yearly employment contract, the affiliation, and the closure of Mundelein as an "independent college" extinguished Mundelein's obligations under the manual.  See 
Gray I
, 274 Ill. App. 3d at 262.  We concluded that the trial court erred in finding, as a matter of law, that they did.  We left open the possibility that, as a matter of fact, the elimination of tenure was a necessary consequence of affiliation in an educational setting and could be established as such on remand.  On remand the Mundelein expert witnesses and evidentiary materials attempted to establish just that.

Mundelein suggests that since the parties did not anticipate affiliation in the manual, custom and practice of educational institutions controls this case.  Mundelein argues that the AAUP guidelines should be used to "fill the [m]anual's silences."  This was a proper argument within the context of the remand.  But it was not an argument that Mundelein was forced to make because the burden of proof was improperly shifted.  If summary judgment had not been entered in Mundelein's favor, Mundelein would have been allowed to make the argument at trial.

Custom and usage is an aid to finding the intent of the parties when the contract was made.  See 
Chicago Bridge & Iron Co. v. Reliance Insurance Co.
, 46 Ill. 2d 522, 531-32, 264 N.E.2d 134 (1970).  Custom and usage may only be relied upon to interpret an agreement if the practice was "so well known, uniform, long-established and generally acquiesced in as to induce the belief that the parties contracted with reference to it."  
Nielsen v. United Services Automobile Asso'n
, 244 Ill. App. 3d 658, 664, 612 N.E.2d 526 (1993).  Evidence of custom and usage is only admissible to explain uncertain or ambiguous terms.  When terms of a contract are clear, those terms alone determine the obligations of the parties.  
Nielsen
, 244 Ill. App. 3d at 663-64.

Mundelein would have us refer to the custom and usage of educational institutions even though clear contract terms apply.  We agree that the evidence shows the parties never considered the impact of affiliation, but the parties defined precise circumstances under which Mundelein could terminate tenure.  While Mundelein offered evidence that custom and usage would dictate that affiliation abolished tenure, they offered no evidence that plaintiffs were aware of such custom and usage or that plaintiffs understood that the faculty manual tenure provisions would not apply in an affiliation scenario.  Absent such knowledge, plaintiffs had a right to rely on the manual.  The manual provisions are controlling here.

Mundelein next argues, without citing authority, that the trial court's decision violates public policy by encouraging school closures rather than affiliations.  We disagree.  Requiring Mundelein to adhere to the terms set out in a manual it drafted before terminating tenure violates no public policy.  Nor does it encourage school closure.  Mundelein could have taken whatever course was necessary to remedy its financial difficulties without continued obligation to tenured faculty if it had followed the procedures set out in its manual.  

Mundelein next argues that plaintiffs failed to prove damages beyond the two years' salary they were offered.  Plaintiffs were awarded damages through December 31, 1996.  Mundelein argues that if Mundelein had not affiliated with Loyola, Mundelein would have closed in 1992, and plaintiffs could not have earned more than one year's additional salary.

The measure of damages for breach of an employment contract is the amount the plaintiff would have earned absent the breach, less what he earned or could have earned during the contract period after his termination.  
Ashe v. Sunshine Broadcasting Corp
, 90 Ill. App. 3d 97, 100, 412 N.E.2d 1142 (1980).

Mundelein argues that the following evidence showed that Mundelein would have closed in 1992: plaintiffs' allegations in their pleadings that Mundelein was insolvent at the time of the affiliation; the chair of Mundelein's board of trustees' testimony that the college's financial crisis was severe; a faculty committee's report to the board of trustees in April 1991 that a "state of exigency exists, and *** the [c]ollege is insolvent"; the 1991-92 annual contract provision that "all employment of faculty by the college shall terminate on June 30, 1992"; and testimony from a representative of the BVM Order that the BVM Order was serious about forcing Mundelein to close. 

We decline to rely on the imprecise use of the term "insolvent" in plaintiffs' pleadings and the faculty committee recommendations.  The term "insolvency," as used in those documents, is vague.  Under Illinois and federal bankruptcy law, a debtor is insolvent if the sum of his debts is greater than his property at a fair valuation.  See 11 U.S.C. §101(32)(A) (1994); 740 ILCS 160/3 (West 1996).  There was no judicial finding of insolvency here.

Mundelein cites no authority that plaintiffs must prove Mundelein "[w]ould have survived" absent Mundelein's breach.  And Mundelein's claim that it would have closed is speculative.  The fate of Mundelein is not "undisputed," as Mundelein suggests.  Mundelein ignores the chair of Mundelein's board of trustees' testimony that if affiliation negotiations with Loyola had failed, Mundelein would have attempted to "restructure" or to affiliate with another school.  The board chair further testified that if affiliation did not work out and "it came down to a restructuring versus a close [of the school, there] would have been a restructuring."  Helen Garvey, a representative of the BVM Order and a member of Mundelein's board of trustees, testified that she was "very serious about closing the college" in accord with the BVM Order's agreement with Mundelein.  But she also said, "We didn't want to *** close ***.  What we hoped was that affiliation would work and if it didn't we'd have to look at something else."  Just as Mundelein continued to exist when it affiliated with Loyola, it may have continued to exist if it restructured or affiliated with another school.  

We next address an argument advanced in Mundelein's original brief that "[t]here is no basis in the record for [the trial court] to retain jurisdiction or entertain future proceedings to award damages for additional lost compensation."  

In the trial court's November 7, 1996, order, the court awarded damages and "reserve[d] the right to adjust this figure during the continued pendency of this case and in the interest of both fairness and judicial economy to provide a suggested procedure for 'future damages.'"  Plaintiffs then filed a post trial motion asking the court to recalculate damages.  In its January 23, 1997, order, the court recognized that it could not award future damages (see 
Lewis v. Loyola University of Chicago
, 149 Ill. App. 3d 88, 500 N.E.2d 47 (1986)), but acknowledged that "plaintiffs Gray and Hasty may bring future actions during the term of their employment contract for damages which are sustained subsequent to trial."  

The record shows that the trial judge did not retain jurisdiction but entered final orders on all matters before him.  We read his remarks as an affirmation of the right of the plaintiffs to do what, under the law, they were already entitled to do: bring a cause of action when it is ripe for adjudication.  See 
Corby v. Seventy-One Hundred Jeffery Avenue Building Corp.
, 325 Ill. App. 442, 457, 60 N.E.2d 236 (1945) ("[t]he plaintiff has a right, if he so desires in the future to institute proceedings from time to time during the term of the contract for damages which he may have sustained").

Mundelein next argues that the trial court erred in ruling that the faculty manual is "an instrument in writing" that supports an award of prejudgment interest under section 2 of the Interest Act (815 ILCS 205/2 (West 1996)).   Whether to award prejudgment interest is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.  
Krantz v. Chessick
, 282 Ill. App. 3d 322, 327, 668 N.E.2d 77 (1996).  

Section 2 allows creditors to receive 5% interest "for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing."  815 ILCS 205/2 (West 1996).  We have held that "[t]he type of instrument contemplated is [one] that evidences money lent or advanced, thus setting up a creditor-debtor relationship," and that the writing must "bear a specific date by which the indebtedness created comes due."  
Wilder Binding Co. v. Oak Park Trust & Savings Bank
, 173 Ill. App. 3d 34, 42-43, 527 N.E.2d 354 (1988), 
rev'd on other grounds
, 135 Ill. 2d 121 (1990); see also 
Krantz
, 282 Ill. App. 3d 322.  A faculty manual is not an "instrument in writing" for purposes of the Interest Act.  See 
Arneson v. Board of Trustees
, 210 Ill. App. 3d 844, 853, 569 N.E.2d 252 (1991).  We must reverse the trial court's award of prejudgment interest.

Plaintiffs next argue that the trial court erred in granting summary judgment to Loyola on the issue of successor liability.  We review summary judgment 
de
 
novo
.  
Prettyman v. Commonwealth Edison Co.
, 273 Ill. App. 3d 1090, 1093, 657 N.E.2d 637 (1995).

As a general rule, when a corporation merges with another, it takes on the latter's obligations and liabilities.  But when a corporation merely purchases the assets of another corporation, the purchasing corporation is not liable for the debts and liabilities of the selling corporation by reason of its succession.  
Kaleta v. Whittaker Corp.
, 221 Ill. App. 3d 705, 708-09, 583 N.E.2d 567 (1991).  But a purchasing corporation will be liable if the plaintiff establishes that the purchase amounts to a 
de
 
facto
 merger.  To establish 
de
 
facto
 merger, plaintiffs must show that: (1) the seller ceased operation and dissolved; (2) the buyer assumed the seller's liabilities and obligations necessary for the uninterrupted continuation of business; (3) there is a continuity of shareholders; and (4) there is a continuity of the business enterprise, including management, employees, location, general business operations, and assets.  
Kaleta
, 221 Ill. App. 3d at 709.  All four elements must be proven to establish 
de
 
facto
 merger.  
Myers v. Putzmeister, Inc.
, 232 Ill. App. 3d 419, 424, 596 N.E.2d 754 (1992); 
Kaleta
, 221 Ill. App. 3d at 710
.  

Plaintiffs do not argue that any of the elements of 
de
 
facto
 merger have been established.  Instead they argue that "[u]nder the unique facts of this case, the four indicia of 
de
 
facto
 merger *** should not be immutable rules which apply with full force to [not]-for-profit corporations, which do not have shareholders."  But plaintiffs cite no authority that would allow us to deviate from the clear requirements to establish a 
de
 
facto
 merger.  And plaintiffs do not suggest what "indicia" should be applied to not-for-profit corporations.  We note that not-for-profit corporations are controlled by "members" rather than "shareholders."  Compare 805 ILCS 5/7.05 (West 1996) to 805 ILCS 105/107.03 (West 1996).  But even disregarding the requirement that there be a continuation of shareholders, plaintiffs cannot establish the other elements of 
de
 
facto
 merger.  Mundelein did not dissolve.  Nor did Mundelein's business continue "uninterrupted."  There were significant changes in the management, employees, and business operations after the affiliation.  The "affiliation" of Loyola and Mundelein is not the type of union covered by the 
de
 
facto
 merger doctrine.

Plaintiffs note that "[t]he imposition of liability upon the successor corporation is grounded upon the notion that no corporation should be permitted to commit a tort or breach a contract and avoid liability through corporate transformation in form only."  
Munim v. Azar
, 648 So. 2d 145, 154 (Fla. Dist. Ct. App. 1994).  But Mundelein continues to exist as a corporate entity and has not avoided liability here.

We next address plaintiff Myers' cross-appeal.  She argues that she did not waive her tenure rights by accepting a five-year teaching contract with Loyola.  

Whether Myers waived her right to sue for loss of tenure is a question of fact, the resolution of which will not be disturbed unless it is contrary to the manifest weight of the evidence.  
Sexton v. Smith
, 112 Ill. 2d 187, 194, 492  N.E.2d 1284 (1986).  Waiver is the relinquishment of a known right.  
Pantle v. Industrial Comm'n
, 61 Ill. 2d 365, 372, 335 N.E.2d 491 (1975).  A waiver may be made by express agreement or implied from the conduct of the party who allegedly waived the right.  
Ryder v. Bank of Hickory Hills
, 146 Ill. 2d 98, 105, 585 N.E.2d 46 (1991).  Waiver will be implied when a party's conduct is inconsistent with an intention to assert the right.  
Ryder
, 146 Ill. 2d at 105.

Myers argues that nothing she did was inconsistent with asserting her breach of contract claim against Mundelein.  We agree.  Myers' acceptance of a five-year teaching position and her efforts to obtain tenure at Loyola are not inconsistent with pursuit of a remedy against Mundelein.  A plaintiff has a duty to mitigate damages.  In breach of employment contract cases, this duty includes seeking other employment.  See 
Arneson
, 210 Ill. App. 3d at 851-52.  Myers' mitigation of damages by accepting employment with Loyola does not amount to waiver.  

We note that continued employment under new employment conditions after a breach of employment contract may, in some circumstances, result in a waiver of a plaintiff's breach of contract claim.  See 
Vandevier v. Mulay Plastics, Inc.
, 135 Ill. App. 3d 787, 482 N.E.2d 377 (1985) (finding waiver where plaintiff acquiesced for seven years to the payment of a lower commission than he alleged he was entitled to under a contract).  But Myers did not continue to work for Mundelein.  She worked for Loyola.  Defendants cite no case in which the acceptance of employment with a different entity amounts to waiver.

Mundelein notes that it was the affiliation agreement between Mundelein and Loyola that created the five-year teaching position Myers was selected to fill.  But Mundelein does not dispute that Loyola, not Mundelein, selected Myers and offered her the position.  If Loyola intended to extinguish Myers' tenure claim against Mundelein through acceptance of Loyola's offer, nothing prohibited Loyola from including that condition in its offer of employment.

But Myers is entitled only to a declaration that Mundelein breached its contract.  In defendant Mundelein's petition for rehearing, Mundelein notes that Myers did not seek damages or prove damages before the trial court.  Myers sought only a declaratory judgment and injunctive relief in her complaint.

We remand with directions to enter judgment for plaintiff Myers.  The trial court is instructed to recalculate plaintiffs Gray and Hasty's damages in a manner consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

GORDON and BURKE, JJ., concur.