136 F.Supp.2d 5 (2001)
LIBERTY MUTUAL INSURANCE COMPANY, et al.
v.
HOUSEHOLD INTERNATIONAL, INC., et al.
CIV.A. No. 92-11180-RWZ.
United States District Court, D. Massachusetts.
April 2, 2001.
*6 Brian A. Davis, Choate, Hall & Stewart, Boston, MA, for Liberty Mutual Insurance Co., Liberty Mutual Fire Ins. Co.
Joseph L. Kociubes, Bingham, Dana & Gould, Boston, MA, David M. Schiffman, Sidley & Austin, Chicago, IL, for Household International, Inc.
Shepard M. Remis, Anthony S. Fiotto, Goodwin Procter LLP, Boston, MA, for Eljer Manufacturing, Inc., fka Household Manufacturing, Inc.
George J. Skelly, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, David E. Springer, Chicago, IL, for Nippon Sanso K.K.
George J. Skelly, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, David E. Springer, Matthew M. Neumeier, Chicago, IL, for Thermos Co., a Division of King Seely Thermos Co.

MEMORANDUM OF DECISION
ZOBEL, District Judge.
Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (collectively "Liberty") seek to recover unpaid premiums on written insurance policies that, throughout the 1980s, covered Household Manufacturing, Inc., ("HMI"), and certain HMI subsidiaries and divisions. HMI was itself the manufacturing subsidiary of Household International, Inc. ("HI")
*7 The insurance premiums associated with these policies had two components: an initial premium, billed at the beginning of the policy period and paid in fixed monthly installments, and a retrospective premium adjustment ("retro adjustment"), billed annually in arrears. The initial premium was an estimate of policyholders' liability for premiums. The retro adjustment reflected the actual claims experience of the insured during the past year.
Plaintiff and HMI executed written "Premium Payment Agreements" governing the payment of premiums due under the policies. As a practical matter, HMI, a holding company for numerous manufacturing businesses including King-Seeley Thermos Company ("KST") and Hydrometals, Inc. ("Hydrometals"), computed the share of retro premiums payable by each HMI subsidiary or division according to the claims experience of each, and the premiums were paid by the manufacturing entities.
In January 1989, HI announced plans to divest the HMI manufacturing businesses; and, in March 1989, it executed a Reorganization and Distribution Agreement delineating the process by which the divestiture would be accomplished. Pursuant to this agreement, some HMI business units were spun off to shareholders and others were sold. As a result, a dispute arose regarding the premiums owned by various manufacturing businesses, and Liberty was not paid substantial portions of premiums due on the policies. Liberty moves for summary judgment on its breach of contract claims (Counts I and II) against HI in order to recover $1,551,790 in unpaid retro premium adjustments.
HI was not a party to the Premium Payments Agreements with Liberty. Nevertheless Liberty seeks to recover unpaid premiums from HI on the grounds that the latter expressly or impliedly assumed the obligations of various of its subsidiaries that were named insureds. Specifically, Liberty claims, and HI vigorously disputes, that (1) KST and Hydrometals were jointly and severally liable to Liberty for the retro adjustments; (2) HI acquired the liabilities of KST and Hydrometals, including the obligation to pay retro premiums to Liberty; and (3) Liberty can enforce HI's obligations. In order to prevail on this motion Liberty must prevail on each of these propositions.
For purposes of this motion, I will assume the first requirement, that KST and Hydrometals, former wholly-owned subsidiaries of HMI, are bound by the Premium Payment Agreements even though they are not signatories and thus jointly and severally liable for all insurance premiums.
As to the second element, Liberty relies on the doctrine of successor liability. It argues that HI acquired the liability of KST and Hydrometals as successor to HMI pursuant to the Reorganization and Distribution Agreement. Successor liability is not, however, automatic. It is properly imposed only in cases involving (a) a de facto merger or consolidation of successor and predecessor; (b) implied assumption of liability by the successor; or (c) express assumption of liability by the successor.
To establish a de facto merger, Liberty must show that (1) the seller ceased operation and dissolved; (2) the buyer assumed the seller's liabilities and obligations necessary for the uninterrupted continuation of business; (3) there is a continuity of shareholders; and (4) there is a continuity of the business enterprise, including management, employees, location, general business operations, and assets. Gray v. Mundelein College, 296 Ill. App.3d 795, 808, 231 Ill.Dec. 260, 695 *8 N.E.2d 1379, 1388 (Ill.App.1998[1]). However, the sellers in this case, KST and Hydrometals, did not cease operations and dissolve. They were split up and eventually merged into other companies, KST into Scotsman Industries, Inc., Hydrometals into HMI. Certain assets of both KST and Hydrometals were distributed to HI and then to newly formed that were later sold. The original subsidiaries were not, however, absorbed into HI.
Liberty also contends that HI impliedly assumed KST and/or Hydrometals' liability to pay retro adjustments by administering the insurance policies that Liberty had issued to HMI, by paying the 1988 retro premium adjustment, by advancing payment of monthly deferred premiums, and by posting a letter of credit to cover future monthly premiums. None of these actions compel the conclusion that HI assumed any liability of its former subsidiaries. The administrative services it provided it was contractually obligated to provide, for a fee. Further, payment of one retro adjustment and some monthly premiums in combination with posting a letter of credit does not conclusively establish that HI assumed KST and or Hydrometals's retro adjustments thereafter.
There remains Liberty's argument that HI in the Reorganization Agreement expressly assumed the relevant liabilities of KST and Hydrometals. The Agreement does provide in Section 2.03(c)(iv), that in connection with any assets distributed to HI, the company "will assume all Liabilities relating to such assets and the business and operations related thereto." However, in Section 11.10, the Agreement limits the reach of Section 2.03 by providing that
"this Agreement is solely for the benefit of the parties hereto and their respective subsidiaries and Affiliates and should not be deemed to confer upon third parties any remedy, claim, Liability, reimbursement, claim of action or other right in excess of those existing without reference to this Agreement."
The issue then is whether or not Liberty is an intended third party beneficiary under the Agreement such that it can enforce HI's obligations under the Agreement. Liberty claims that, despite a "no third party beneficiaries" provision in the agreement, it can enforce obligations that HI expressly assumed under the assumption provision.
Under Delaware law, which governs the Reorganization agreement, the intent of the parties to the contract controls. HI asserts that the "no third party beneficiary" clause is conclusive evidence of its intent. However, Liberty claims to be an intended beneficiary of the Agreement despite the clause because HI expressly assumed liability to Liberty. Liberty relies on Local Union No. 1812 v. BethEnergy Mines, Inc., 992 F.2d 569 (6th Cir.1993) in which a buyer expressly assumed certain obligations to a third party labor union in an Asset Purchase Agreement and the court subsequently allowed the union to enforce those obligations against the buyer despite a "no third party beneficiary provision." But in that case the buyer conceded that the clause was not intended to affect and did not affect, the union's ability to enforce buyer's obligations. Here HI made no such concession. Therefore, on this record, I cannot find as a matter of law that Liberty was an *9 intended third party beneficiary of the Reorganization Agreement.
Because HI did not expressly assume the obligation of its subsidiaries to pay these insurance premiums, and because there is no legal basis to imply such an obligation, plaintiff's motion for summary judgment is denied. As a consequence, the motion concerning interest rates is moot.
NOTES
[1] While the parties disagree as to whether the law of Massachusetts or Illinois applies to this case, choice of law need not be decided since the substantive law in both states is essentially identical See Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 359-60, 676 N.E.2d 815, 818 (1997).